| | |
|---|---|
| STATE OF MAINE<br>COUNTY OF HANCOCK, ss | SUPERIOR COURT<br>Docket No. CV-2022- |

| | |
|---|---|
| MATTHEW THURSTON,<br>Individually and on behalf of others similarly situated<br><br>    Plaintiff,<br><br>v.<br><br>PROGRESSIVE CASUALTY INSURANCE COMPANY<br><br>and<br><br>UNITIED FINANCIAL CASUALTY CO.<br><br>    Defendants | **FIRST AMENDED<br>CLASS ACTION COMPLAINT** |

NOW COMES the Plaintiff, Matthew Thurston, by and through counsel, and makes the following Complaint individually, and on behalf of a class of persons defined below, against the Defendants.

## INTRODUCTION

1. The Plaintiff, Matthew Thurston, was sold an auto insurance policy by "Progressive."

2. The commonly known PROGRESSIVE trademark is registered to Progressive Casualty Insurance Company. However, the Plaintiff's policy is underwritten by United Financial Casualty Co. The Defendants will be referred to throughout this Complaint as either "Defendant," "Defendants," or "Progressive."

3. As part of the sale, Progressive promised that it would pay him the value of his car if it were damaged in an accident.

4. Based on the promises, Plaintiff bought the policy and premiums for an auto insurance policy from Progressive.

5. On or around January 21, 2022, Plaintiff's car, that was covered by the policy was "totaled" in a motor vehicle collision.

6. When it came time for Progressive to honor the promises made in the policy it sold to Plaintiff, Progressive did not live up to its promises.

7. Rather than pay Plaintiff the value of his car, Progressive instead chooses to conspire with another company and not pay Plaintiff what he is owed.

8. Progressive hired another company, Mitchell, to appraise Plaintiff's total loss claims. Mitchell systematically, and without any reasonable justification, depresses the appraised value of all total loss vehicles or coordination with Progressive.

9. Rather than pay Plaintiff fair value for his car, Progressive relied on Mitchell's systemic depressed value.

10. Instead of Progressive paying fair value as promised to Plaintiff and all other similarly situated Mainers, Defendant shorts them and they receive less than what they were promised.

## PARITIES AND VENUE

11. The Plaintiff, Matthew Thurston, is a resident on Hancock County, Maine, and has a Progressive Auto Policy which he purchased in Maine.

12. This action is also asserted on behalf of a class consisting of the following:

    All persons who were insured by the Defendant in the State of Maine, for personal or family use of a vehicle, in the six years preceding the filing of this Complaint, who were paid or offered compensation for a total loss on their vehicle and the offer was reduced based on a Valuation Report obtained by Defendant that included a projected sold adjustment ("the Class").

13. Defendant, Progressive Casualty Insurance Company, has its corporate headquarters located at 6300 Wilson Mills Rd, Mayfield Village, OH 44143.

14. Defendant United Financial Casualty Co. has its corporate headquarters located at 6300 Wilson Mills Rd, Mayfield Village, OH 44143.

15. Progressive Casualty Insurance Company and United Financial Casualty Co., are, for all practical purposes, part of the Progressive Group of Insurance Companies.

16. According to its website, Progressive conducts business in Maine and throughout the country under the brand Progressive or the Progressive Group of Insurance Companies.

17. Progressive's website attempts to convey a sense that Progressive can be trusted and that it works hard on behalf of its customers. To enter the auto insurance section of Progressive's website, one clicks on a link that says, "*buckle up with protection you can rely on.*"

18. Thurston never got the protection promised.

19. Progressive also tells customers that, with Progressive, they get "*superior claims service*" and that Progressive will "*support you every step of the way*," and tells potential customers to "*join us today and experience why we're one of the best insurance companies.*"

20. After making these promises, Progressive unfairly and systematically lowers the value of total loss claims it is supposed to pay in Maine.

21. Its annual report states that one of Progressive's four core values is integrity, stating *"[w]e revere honesty and adhere to high ethical standards to gain the trust and confidence of our customers. We value transparency, encourage disclosing bad news, and welcome disagreement."*

22. Mr. Thurston's example, as summarized in this Complaint, is but one of many hundreds, if not thousands, of such instances where consumers in Maine are getting less than they are owed by Progressive for a total loss vehicle.

## FACTS

23. On January 21, 2022, the Plaintiff's vehicle was badly damaged in a collision.

24. The vehicle was a 2012 Volvo XC70 with VIN #YV4952BL2C1140915.

25. At the time of the collision, the vehicle was in the process of being transferred from Scott Thurston, the Plaintiff's father, to the Plaintiff.

26. Scott Thurston gave his son the vehicle on or around January 5, 2022, in Louisiana, and Matthew drove the car to Maine shortly thereafter.

27. At the time of the collision, the Plaintiff had auto insurance from Progressive.

28. Progressive is obligated to pay for damage to the vehicle under the Plaintiff's collision policy because the Defendant had an existing collision policy with Progressive for other vehicles, and, consistent with his contract with Progressive, had the option to elect to add any new vehicle within thirty (30) days of obtaining the new vehicle.

29. Plaintiff made a claim for the damage to the Volvo or around January 25, 2022, and added the vehicle to the policy at the same time, which was within the 30-day "grace period" for adding a new vehicle.

30. Progressive accepted the claim and declared the Plaintiffs' vehicle to be a "total loss" and offered to pay the Plaintiff what it claimed was the actual cash value of the vehicle.

31. Progressive's offer to pay the Plaintiff for the vehicle was less than the full value it had promised to pay.

32. Plaintiff's situation was not unique because Progressive's standard practice systemically reduces its offer to pay to less than the value of total loss vehicles without any reasonable or rational basis.

33. Progressive's standard practice involves obtaining a "Vehicle Valuation Report" ("Valuation Report") from the Defendant's contractor, often if not always Mitchell, and then using the Valuation Report provided by Mitchell (or others) to offer Maine consumers less than the value of their total loss vehicle.

34. Progressive provided a Valuation Report for the Plaintiff on or around February 17, 2022. *See* Exhibit A.

35. On information and belief, the Valuation Reports related to total-loss vehicles used by Progressive during the relevant period in Maine followed the same standard practice that provided Plaintiff and others an offer to pay that relied on the use of "Valuation Reports".

36. These Valuation Reports start with a list of comparable used vehicles, normally of the same year, and make and model as the vehicle being appraised. The reports base the value of the vehicle to be appraised upon the advertised prices for comparable vehicles. The report uses those advertised prices to create a model of the value of the total loss vehicle.

37. The report then deviates from the advertised prices of comparable vehicles by claiming to adjust those advertised prices to account for differences in equipment, mileage, and vehicle configuration to create a base value for the vehicle being appraised.

38. The Valuation Reports also include a "Projected Sold Adjustment" for each of the comparable vehicles used in the Valuation Report. These Projected Sold Adjustments are, invariably, a downward adjustment in the value of the comparable vehicles. In the report used to determine the value of the Plaintiff's vehicle, Mitchell applied Projected Sold Adjustments of -$398.00, -$537.00, and -$427.00 to the three vehicles used as comparable vehicles in the Valuation Report. See Exhibit A, pp 5-6.

39. Progressive's Projected Sold Adjustments are used for arbitrary downward adjustments to its offers to pay the values of the comparable vehicles. The result of the adjustment is that the

alleged value of each comparable vehicle used to determine the value of the vehicle being appraised, are lower. This, in turn, is used to lower the purported value of the vehicle being appraised. This leads to consumers being offered, and receiving, less for their vehicle than they are entitled to.

40. The Projected Sold Adjustments are simply used to reduce the amount Progressive pays to consumers.

41. Progressive begins the process of making offers for loss vehicles using the comparative appraisal methodology outlined above, and then seeks further reductions in the value of total loss vehicles, by adding the bogus "Projected Sold Adjustment" into the comparable vehicles in every Valuation Report.

42. A reduction in the market value of a vehicle's list price based on supposed downward price pressure, especially in the current market, where used cars are only available at a significant premium has no rational basis.

43. Progressive's Projected Sold Adjustments are also contrary to appraisal standards. There are several generally recognized and acceptable methodologies for determining actual cash value, including use of comparable vehicles.

44. Appraisers customarily use advertised prices to determine the value of comparable vehicles, and only make adjustments based on observed and verifiable data; reasonable appraisal standards do not permit arbitrary adjustments from the advertised price based upon undocumented and unverifiable assumptions that vehicles tend to sell below list price.

45. The impropriety and arbitrariness of Progressive's Projected Sold Adjustments are further demonstrated by the fact that Mitchell's primary competitor in providing automated valuation reports to insurance companies—CCC Intelligent Solutions—does not apply projected sold adjustments in this manner. Instead, CCC Intelligent Solutions uses list prices.

46. Plaintiff and each member of the class ("the Class") were damaged by Progressive's failure to pay the true value of their cars by its use of the adjustments discussed above that were not proper methodologies or appraisal standards.

47. Were it not for Defendant's deceptive and improper adjustments, the Plaintiff, and other similarly situated consumers in Maine, would have received a greater amount for their total loss vehicles from Progressive.

## CLASS ALLEGATIONS

48. The Plaintiff hereby repeats and realleges the claims in each of the proceeding paragraphs.

49. The Defendant treated the Plaintiff the same way it treats all consumers in Maine whose vehicles it determines to be a total loss.

50. On information and belief, the Defendant, or its agent Mitchell, maintains records containing the Valuation Reports and the financial transactions connected to each total loss vehicle for which Progressive was obliged to pay a claim, in Maine, during the applicable period, and such records would be admissible as evidence in any trial or proceeding as statements of a party opponent.

51. These records would show the amounts of the "Projected Sold Adjustments" that Progressive made to the values of the cars of Plaintiff and the other class members.

52. The records would identify all potential class members by name.

53. On information and belief, the joinder of all persons who meet the class definition in a single proceeding would be impracticable.

54. The claims asserted on behalf of the Plaintiff and the Class present the following issue of fact and law that can and should be combined into a single action:

a. Whether the Defendant, by applying a Projected Sold Adjustment for all total loss vehicles, in Maine, during the relevant time period, has violated 24-A M.R.S. § 2436-A(1)(A) by "knowingly misrepresenting to an insured pertinent facts. . . . related to the coverage at issue;"

b. Whether the Defendant, by applying a Projected Sold Adjustment to all total loss vehicles, in Maine, during the relevant time period, has violated 24-A M.R.S. § 2436-A(1)(E) by "failing to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear;"

c. Whether the Defendant, by applying a Projected Sold Adjustment to all total loss vehicles, in Maine, during the relevant time period, engaged in unfair or deceptive trade practices, in violation of 5 M.R.S. § 207;

d. If the Defendant is liable, what is the amount of damages due from them to the Class;

e. If the Defendant is liable under the Unfair Trade Practices Act, what injunctive or equitable relief to impose upon the Defendant under 5 M.R.S. § 213(1);

f. If the Defendant is liable for conversion, what injunctive relief to impose;

g. If the Defendant is liable for conversion, whether the Defendant acted with Malice toward the Plaintiff and the Class;

h. If the Defendant is liable for conversion, and acted with malice toward the Plaintiff and the Class, the amount of punitive damages to impose.

WHEREFORE, the Plaintiff asks this Honorable Court to:

a. Certify a class of persons, appoint the Plaintiff as class representative and his counsel as Class counsel as to all of the following Counts.

## COUNT I - 24-A M.R.S. § 2436-A – Unfair Claim Settlement Practices

55. The Plaintiff hereby repeats and realleges the claims in each of the proceeding paragraphs.

56. By offering the Plaintiff, and the Class, less than the full market value of his vehicle, by inserting Projected Sold Adjustments into its Valuation Reports, the Defendant has violated 24-A M.R.S. § 2436-A(1)(A) by "knowingly misrepresenting to an insured pertinent information related to the coverage at issue."

57. By offering the Plaintiff and the Class less than the full market value of his vehicle, by inserting Projected Sold Adjustments into its Valuation Reports, the Defendant has violated 24-A M.R.S. § 2436-A(1)(E) by "[w]ithout just cause, failing to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear."

WHEREFORE, the Plaintiff asks this Honorable Court to:

a. Find that the Defendant has violated 24-A § 2436-A;

b. Determine the amount of damages to the Plaintiff and the Class;

c. Impose interest at the rated of 18% per year from the time the claim should have been paid on any damages;

d. Enter judgment against the Defendant; and

e. Award the Plaintiff and the Class their reasonable attorneys' fees and costs.

## COUNT II – 5 M.R.S. § 205-A – Maine Unfair Trade Practices Act

58. The Plaintiff hereby repeats and realleges the claims in each of the proceeding paragraphs.

59. The Plaintiff and the Class purchased the auto insurance policy at question primarily for personal or family use.

60. The Defendant's actions to the Plaintiff and the Class, as alleged in this Complaint, are unfair and deceptive trade practices prohibited by 5 M.R.S. § 207.

61. The Defendant's action toward the Plaintiff and the Class, as alleged in this Complaint, are not authorized, permitted or required by a state or federal agency or by applicable law, rule or regulation or other regulatory approval.

62. The Plaintiff and the Class have suffered a loss of money and/or personal property because of the Defendant's unfair and/or deceptive acts.

WHEREFORE, the Plaintiff asks this Honorable Court to:

   a. Find that the Defendant has violated 5 M.R.S. § 207;

   b. Determine the amount of damages to the Plaintiff and the Class;

   c. Award the Plaintiff and the Class their reasonable attorneys' fees and costs;

   d. Enjoin the Defendant from engaging in such unfair and deceptive trade practices in the future anywhere in the State of Maine;

   e. Enter judgment against the Defendant; and

   f. Impose whatever other remedies the Court deems just and equitable.

## COUNT III – CONVERSION

63. The Plaintiff hereby repeats and realleges the claims in each of the proceeding paragraphs.

64. The Plaintiff, and the Class, by filing a claim with Progressive, made demand for the money they were entitled to under their policy; they had an interest in payment of the full value of their vehicle.

65. Progressive refused to pay the Plaintiff and the Class the money they were entitled to pursuant to their respective claims.

66. Progressive has exercised dominion and control over property of the Plaintiff and the class members.

67. Progressive's actions in denying their policyholders the money they were entitled to when the filed claims, as described in the Complaint, were undertaken with actual or implied malice toward Plaintiff and the Class.

WHEREFORE, the Plaintiff asks this Honorable Court to:

a. Find that the Defendant has converted the Plaintiff's and the Class's property;
b. Find that the Defendant converted the Plaintiff's and the Class's property with actual or implied malice;
c. Determine the amount of damages to be paid to the Plaintiff and the Class;
d. Determine the amount of punitive damages to be paid by the Defendant;
e. Enjoin the Defendant from engaging in similar activities in the future anywhere in the State of Maine;
f. Enter judgment against the Defendant; and
g. Impose whatever other remedies the Court deems just and equitable.

Respectfully Submitted,

Dated: October 24, 2022

John Z. Steed, Esq., Bar #5399
Island Justice
P.O. Box 711 // 40 School Street
Stonington, ME 04681
(207) 200-7077
john@islandjusticelaw.com

# Vehicle Valuation Report



Prepared For: Progressive Group of Insurance Companies  (800) 321-9843

## Claim Information

| Claim Number | Policy Number | Loss Type | Owner |
|---|---|---|---|
| 22-5056549-01 | | UNKNOWN | SCOTT THURSTON 2304 FAIRWAY DR BATON ROUGE, LA 70809 |

| Loss Date | Reported Date | Valuation Report Date | Valuation Report ID | Version Number |
|---|---|---|---|---|
| 01/21/2022 | 01/25/2022 | 02/17/2022 | 1014377008 | 4 |

## Vehicle Information

| Year | Make | Model | Location | Mileage |
|---|---|---|---|---|
| 2012 | Volvo | XC70 4 Door Wagon 3.2L 6 Cyl Gas A FWD | LA 70809 | 55,374 miles |

| Ext Color | License | VIN | Title History |
|---|---|---|---|
| Twilight Bronze Metallic | WDD885, Maine | YV4952BL2C1140915 | No |

## Valuation Summary

### Loss Vehicle Adjustments
Adjustments specific to your vehicle

| | |
|---:|---:|
| Base Value = | $13,231.80 |
| Condition – | $462.43 |
| Prior Damage – | $0.00 |
| Aftermarket Parts + | $55.00 |
| Refurbishment – | $0.00 |
| Market Value = | $12,824.37 |

### Settlement Adjustments
Adjustments specific to your policy

| | |
|---:|---:|
| Settlement Value = | $12,824.37 |

## Settlement Value: $12,824.37



EXHIBIT A

J.D. POWER

Mitchell WorkCenter Total Loss

# Loss Vehicle Detail

Loss vehicle: 2012 Volvo XC70 | 4 Door Wagon | 3.2L 6 Cyl Gas A FWD

## Standard Equipment

### Exterior

| | |
|---|---|
| 16" "CECINO" alloy wheels | Aluminum roof rails w/"XC" logo |
| Body-side protective lower cladding | Front fog lights |
| P215/65R16 all-season tires | Pwr heated mirrors w/memory, puddle lights, integrated turn signals |
| Rear fog light w/auto-off | Rear wiper/washer -inc: automatic function in reverse when front wipers on |
| Safe approach & home safe security lighting | Variable intermittent wipers |
| Volvo Sensus w/integrated 7" color display | |

### Interior

| | |
|---|---|
| "XC" door stitching | "XC" front/rear/cargo textile floor mats |
| 40/20/40 flat-folding rear bench -inc: (3) manual-fold rear head restraints | AM/FM stereo w/CD/MP3/WMA player -inc: HD Radio, 160-watt amp, (8) speakers, USB input, iPod connection |
| Auto-dimming rearview mirror | Bluetooth |
| Central pwr door locks, fuel filler | Cross avenue aluminum inlays |
| Cruise control | Dual illuminated visor vanity mirrors |
| Dual-zone electronic climate control (ECC) w/rear seat vents | Flat-folding front passenger seat |
| Front center armrest | Front door storage pockets |
| Front reclining bucket seats w/adjustable head restraints | Front/rear reading lamps |
| Ignition immobilizer | Illuminated lockable glove box |
| Intelligent driver info system (IDIS) | Interior cabin light delay feature |
| Leather shift knob -inc: aluminum inlay | Leather-wrapped steering wheel w/illuminated cruise & audio controls -inc: aluminum inlay |
| Lockable underfloor storage in cargo area | Outside temp gauge |
| Pollen filter | Pwr driver seat w/adjustable lumbar, 3-position memory |
| Pwr windows -inc: front auto-up/down, anti-trap feature | Rear window defroster w/timer |
| Remote keyless entry | Security alarm system |
| SIRIUS satellite radio w/6-month subscription | T-Tec cloth seating surfaces w/"XC" stitching |
| Tilt/telescopic steering column | Trip computer |

### Mechanical

| | |
|---|---|
| Front wheel drive | Front/rear skid plates |
| Front/rear stabilizer bars | MacPherson strut front suspension |
| Multi-link independent rear suspension | Pwr 4-wheel disc brakes |
| Pwr parking brake w/auto release | Pwr rack & pinion steering |

### Safety

3-point seat belts -inc: pretensioners, front height adjustable anchors

Anti-submarine seats

Collapsible steering column

Driver/front passenger dual stage airbags -inc: front passenger cutoff switch

Dynamic stability & traction control (DSTC)

Rear window deactivation

Tire pressure monitoring system

4-wheel anti-lock braking system (ABS) -inc: electronic brake distribution (EBD), hydraulic brake assist (HBA), ready alert brakes (RAB), fading brake support (FBS)

Child safety rear door locks

Daytime running lights

Driver/front passenger whiplash protection seating system (WHIPS)

ISOFIX child seat attachments -inc: top tether anchors

Side impact protection system (SIPS) -inc: driver/front passenger side-impact airbags, front/rear side inflatable curtains (IC)

## Loss Vehicle Base Value

Loss vehicle: 2012 Volvo XC70 | 4 Door Wagon | 3.2L 6 Cyl Gas A FWD

### Regional Comparable Vehicle Information

Search Radius used for this valuation: 350 miles from loss vehicle zip/postal code.

Typical Mileage for this vehicle: 113,000 miles

| # | Vehicle Description | Mileage | Location | Distance From Loss Vehicle | Price | Adjusted Value |
|---|---|---|---|---|---|---|
| 1 | 2012 VOLVO XC70 PREMIER PLUS 4D WGN 6 3.2 NORMAL GAS A 2WD | 125,000 | 77015 | 249 miles | $11,569.00 List Price | $11,764.92 |
| 2 | 2012 VOLVO XC70 PREMIER PLUS 4D WGN 6 3.2 NORMAL GAS A 2WD | 82,089 | 36117 | 322 miles | $15,991.00 List Price | $14,712.02 |
| 3 | 2012 VOLVO XC70 PREMIER 4D WGN 6 3.2 NORMAL GAS A 2WD | 105,350 | 35244 | 323 miles | $12,700.00 List Price | $13,218.45 |

**Base Value: $13,231.80**

## Loss Vehicle Adjustments

Loss vehicle: 2012 Volvo XC70 | 4 Door Wagon | 3.2L 6 Cyl Gas A FWD

## Condition Adjustments

Condition Adjustment: -$462.43    Overall Condition: 2.65-Good    Typical Vehicle Condition: 3.00

| Category | Condition | Condition $ | Comments |
|---|---|---|---|
| DASH/CONSOLE | 3 Good | $0.00 | |
| HEADLINER | 2 Fair | -$23.12 | some stains |
| CARPET | 3 Good | $0.00 | |
| GLASS | 3 Good | $0.00 | |
| DOORS/INTERIOR PANELS | 2 Fair | -$46.24 | greater then 3 gouges |
| SEATS | 3 Good | $0.00 | |
| TRIM | 3 Good | $0.00 | |
| BODY | 2 Fair | -$277.46 | crease in right rear door |
| PAINT | 2 Fair | -$115.61 | numerous small scratches |
| VINYL/CONVERTIBLE TOP | Typical | $0.00 | |
| ENGINE | 3 Good | $0.00 | |
| TRANSMISSION | 3 Good | $0.00 | |

Typical Vehicle Condition reflects a condition similar to the same year, make and model. Amount of wear and tear/ damage consistent with its age.

Comments:

## After Market Parts and OEM Equipment Adjustments

| Category | Description | Adjustment Type | Purchase Date | Amount Paid | Adjustment Amount |
|---|---|---|---|---|---|
| INTERIOR | FLOOR MATS (ALL-WEATHER) - 2 ROWS | INSTANT QUOTE | | | $55.00 |

## Regional Comparable Vehicles

Loss vehicle: 2012 Volvo XC70 | 4 Door Wagon | 3.2L 6 Cyl Gas A FWD

Mitchell WorkCenter
Total Loss

## 1. 2012 VOLVO XC70 PREMIER PLUS 4D WGN 6 3.2 NORMAL GAS A2WD — List Price: $11,569.00

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| YV4952BLXC1143836 | MBEdeG1A | 10/05/2021 | 77015 | 249 miles |

Source:
DEALER WEB LISTING - AUTOTRADER.COM
PRIVATE OWNER VIA TRED.COM
APPOINTMENT ONLY
HOUSTON TX 77015
206-471-6212

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$398.00 |
| Vehicle Configuration Adjustment | | | -$1,264.41 |
| Mileage | 55,374 | 125,000 | $2,364.71 |
| Equipment | | | |
| CLIMATE PKG | No | Yes | -$295.92 |
| BLIND SPOT INFORMATION SYSTEM (BLIS) | No | Yes | -$210.46 |
| Total Adjustments: | | | $195.92 |
| Adjusted Price: | | | $11,764.92 |

Comparable Vehicle Package Details
CLIMATE PKG

Comparable Vehicle Option Details
BLIND SPOT INFORMATION SYSTEM (BLIS)

## 2. 2012 VOLVO XC70 PREMIER PLUS 4D WGN 6 3.2 NORMAL GAS A2WD — List Price: $15,991.00

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| YV4952BL1C1142834 | VV2231A | 11/03/2021 | 36117 | 322 miles |

Source:
DEALER WEB LISTING - CARS.COM
JACK INGRAM MOTORS
235 EASTERN BLVD
MONTGOMERY AL 36117
334-277-5700

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$537.00 |
| Vehicle Configuration Adjustment | | | -$1,749.19 |
| Mileage | 55,374 | 82,089 | $1,007.21 |
| Total Adjustments: | | | -$1,278.98 |
| Adjusted Price: | | | $14,712.02 |

### 3 | 2012 VOLVO XC70 PREMIER 4D WGN 6 3.2 NORMAL GAS A2WD | List Price: $12,700.00

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| YV4952BL9C1125148 | M76456A | 02/02/2022 | 35244 | 323 miles |

**Source**
DEALER WEB LISTING - VAST.COM
HENDRICKSUBARU USED
2929 JOHN HAWKINS PARKWAY
HOOVER AL 35244
770-232-0099

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$427.00 |
| Vehicle Configuration Adjustment | | | -$892.27 |
| Mileage | 55,374 | 105,350 | $1,837.72 |
| | | Total Adjustments: | $518.45 |
| | | Adjusted Price: | $13,218.45 |

## Sub-Model Comparison

| Sub-Model Description | Configuration | Original MSRP |
|---|---|---|
| 2012 Volvo XC70 | 4 Door Wagon 3.2L 6 Cyl Gas  FWD | $32,950.00 |
| 2012 VOLVO XC70 PREMIER PLUS | 4D WGN 6 3.2 NORMAL GAS A 2WD | $37,750.00 |
| 2012 VOLVO XC70 PREMIER | 4D WGN 6 3.2 NORMAL GAS A 2WD | $35,900.00 |

# Vehicle Valuation Methodology Explanation

WorkCenter Total Loss was designed and built in conjunction with J.D. Powers, experts in data analysis and vehicle pricing and a highly trusted name among consumers. With years of experience in vehicle pricing, J.D Power is a credible, third-party expert whose name provides consumer recognition and confidence. WCTL provides a consistent methodology across all vehicles and it includes valid comparable vehicles that most closely resemble the totaled vehicle and are similar to the vehicles a consumer would find in their own research.

WorkCenter Total Loss produces accurate and easy-to-understand vehicle valuations via this five step process:

**Step 1 - Locate Comparable Vehicles**

Locate vehicles that are the closest match to the loss vehicle in the same market area. WorkCenter Total Loss utilizes consumer-based vehicle sources along with inventory directly from Dealerships. When available WCTL also provides sold vehicle records from sources such as J.D. Powers.

**Step 2 - Adjust Comparable Vehicles**

Make adjustments to the prices of the comparable vehicles. The comparable vehicles are identical to the loss vehicle except where adjustments are itemized. There are several types of comparable vehicle adjustments

- Projected Sold Adjustment - an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price).
- Vehicle Configuration Adjustment - an adjustment for differences in configuration between the comparable vehicle and the loss vehicle (e.g. differences in trim).
- Mileage Adjustment - an adjustment for differences in mileage between the comparable vehicle and the loss vehicle.
- Equipment - adjustments for differences in equipment between the comparable vehicle (e.g. equipment packages and options) and the loss vehicle.

**Step 3 - Calculate Base Vehicle Value**

The base vehicle value is calculated by averaging the adjusted prices of the comparable vehicles.

**Step 4 - Calculate Loss Vehicle Adjustments**

There are four types of loss vehicle adjustments:

- Condition Adjustment:

  Adjustments to account for the condition of the loss vehicle prior to the loss.

- Prior Damage Adjustment:

  Adjustments to account for any prior damage present on the loss vehicle prior to the loss.

- After Market Part Adjustment:

  Adjustments to account for any after market parts present on the loss vehicle prior to the loss.

- Refurbishment Adjustment:

  Adjustments to account for any refurbishment performed on the loss vehicle prior to the loss.

**Step 5 - Calculate the Market Value**

The Market Value is calculated by applying the loss vehicle adjustments to the base value.