UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| MATTHEW THURSTON, individually and on behalf of others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>PROGRESSIVE CASUALTY INSURANCE COMPANY and UNITED FINANCIAL CASUALTY COMPANY<br><br>    Defendants. | Docket No. 1:22-cv-00375-NT |

**DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO COMPEL APPRAISAL AND STAY THE PROCEEDINGS AND MEMORANDUM IN SUPPORT**

Defendants Progressive Casualty Insurance Company ("Progressive Casualty") and United Financial Casualty Co. ("UFCC"), by and through their undersigned counsel, hereby move to dismiss with prejudice Plaintiff's Amended Class Action Complaint, or, in the alternative, to compel appraisal and stay the proceedings. This Motion is supported by the accompanying Memorandum of Law.

## **INTRODUCTION**

This dispute concerns the amount of a settlement payment due under an automobile insurance policy. In January 2022, Plaintiff totaled his car and submitted an insurance claim to UFCC.[1] UFCC offered Plaintiff the actual cash value ("ACV") of his loss vehicle, pursuant to Plaintiff's Policy.

As Plaintiff alleges in the Amended Complaint, UFCC determined the ACV of his vehicle using a third-party vendor, Mitchell International Inc. ("Mitchell"). *See* Am. Compl., Dkt. 1-2. The details of Mitchell's valuation were provided to Plaintiff in a Vehicle Valuation Report. *See* Am. Compl. Ex. A (the "Valuation Report"). Specifically, Mitchell identified three comparable vehicles that had been listed for sale in the area. The Mitchell software then applied a "Projected Sold Adjustment" ("PSA") to those listed vehicles to account for the fact that pre-owned vehicles typically sell for amounts less than their list prices.

Plaintiff disagreed with the amount UFCC offered to settle his claim. But Plaintiff's insurance policy provides a mechanism to resolve such disagreements. The policy provides that if the insured and UFCC disagree "on the amount of a loss" then either party may demand an appraisal. If one party demands appraisal, the other must identify its appraiser within 30 days. UFCC demanded appraisal in March 2022 and again in August 2022. Plaintiff refused to participate in the appraisal process, which is a condition precedent to filing a lawsuit against UFCC. Accordingly, Plaintiff's lawsuit is barred.

---

[1] The Amended Complaint purports to refer to Progressive Casualty and UFCC collectively as "Defendant," "Defendants," and "Progressive." However, the *only* allegation as to Progressive Casualty is that it owns the "Progressive" trademark, while Plaintiff alleges that his insurance policy at issue was underwritten by UFCC. Am. Compl. ¶ 2. For purposes of this Motion, Defendants will interpret allegations as to "Defendant," "Defendants," and "Progressive" as referring to UFCC only.

Even if Plaintiff could pursue a lawsuit against UFCC, his Amended Complaint should still be dismissed for the independent reason that it fails to state a claim. Plaintiff alleges that UFCC violated the Maine Unfair Claims Settlement Practices Act, Me. Rev. Stat. Ann. tit. 24-A, § 2436-A ("UCSPA"), Am. Compl. ¶¶ 56–57, and the Maine Unfair Trade Practices Act, Me. Rev. Stat. Ann. tit. 5, § 205-A, *et seq.*, *id.* ¶ 60, because the PSA allegedly resulted in an inaccurate valuation of his totaled vehicle. Plaintiff also brings a claim for common law conversion. *Id.* ¶¶ 64–65. Each of these claims fail.

*First*, Plaintiff has not alleged conduct that would violate the UCSPA or UTPA. The Amended Complaint contains no well-pled allegations of a knowing misrepresentation or an unjustifiable or inequitable settlement offer sufficient to sustain his claim under the UCSPA. So too with Plaintiff's UTPA claim: Beyond a conclusory recital of the statutory elements of a UTPA claim, Plaintiff does not allege facts demonstrating that the challenged conduct meets Maine's definition of "unfair" or "deceptive." At bottom, all Plaintiff alleges is a disagreement with one adjustment applied to estimate the value of his total-loss vehicle—which is far from sufficient to support a claim under either the UCSPA or the UTPA.

*Second,* Plaintiff's statutory claims fail for an additional reason: Both the UCSPA and UTPA condition a private right of action on an injury or loss caused by the challenged practice. But Plaintiff fails to plausibly allege that he suffered injury through application of PSAs on his Valuation Report.

*Third,* Plaintiff's conversion claim fails because under Maine law, a plaintiff cannot state a claim for conversion of money in cases where a disputed amount was not paid on demand. Accordingly, the Court should dismiss the conversion claim.

3

*Fourth*, Plaintiff's only allegation specific to Progressive Casualty is that the company owns the "Progressive" trademark. In fact, as Plaintiff alleges, UFCC—not Progressive Casualty—was the underwriter of Plaintiff's Policy. *Id.* ¶ 2. Plaintiff fails to allege a single fact tying Progressive Casualty to the handling of his claim or valuation of his total loss. At a minimum, Plaintiff's claims against Progressive Casualty should be dismissed.

Alternatively, if the Court declines to dismiss the Amended Complaint, UFCC requests that the Court stay the proceedings and compel Plaintiff to complete the appraisal process required by his policy.

## BACKGROUND

### A. Plaintiff's Total-Loss Claim

Plaintiff is a Maine citizen who had first-party automobile insurance coverage underwritten by United Financial Casualty Company. *Id.* ¶ 11. Under Plaintiff's Policy,[2] UFCC agreed to "pay for sudden, direct, and accidental loss" to Plaintiff's vehicle. *See* Ex. 1, Declaration of Matthew Morrison ("Morrison Decl.") Ex. A at 15 ("Policy"). The maximum payment UFCC agreed to make is the lowest of four limits of liability enumerated in the Policy, one of which was the ACV of Plaintiff's total-loss vehicle:

1. The limit of liability for loss to a covered auto, non-owned auto, or custom parts or equipment is the lowest of:
    a. the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible;
    b. the amount necessary to replace the stolen or damaged property reduced by the applicable deductible;

---

[2] Although Plaintiff neglected to attach the Policy to his complaint, the Court may consider it in ruling on Defendants' Rule 12(b)(6) motion. *See Rivera v. Kress Stores of P.R., Inc.*, 30 F.4th 98, 102 (1st Cir. 2022) ("In adjudicating a Rule 12(b)(6) motion, a district court may consider not only the complaint but also any documents annexed to it (the authenticity of which are unchallenged) and other such documents that are sufficiently referenced and/or relied upon in the complaint.").

4

      c. the amount necessary to repair the damaged property to its pre-loss condition reduced by the appliable deductible; or

      d. the Stated Amount shown on the declarations page for that covered auto.

*Id.* at 18. The Policy provides that UFCC "may use estimating, appraisal, or injury evaluation systems to assist [it] in adjusting claims under this policy and to assist [it] in determining the amount of damages, expenses, or loss payable under this policy." *Id.* at 24 ("We may use estimating, appraisal, or injury evaluation systems to assist us in adjusting claims under this policy and to assist us in determining the amount of damages, expenses, or loss payable under this policy. Such systems may be developed by us or a third party and may include computer software, databases, and specialized technology.").

If there is a dispute between UFCC and the insured "on the amount of a loss, then [UFCC] or [the insured] may demand an appraisal of the loss. Within 30 days of any demand for an appraisal, each party shall notify the other party of that appraiser's identity. The appraisers will determine the amount of loss." *Id.* at 21. The Policy also makes clear that UFCC "may not be sued unless there is full compliance with all the terms of this policy." *Id.* at 27.

On January 21, 2022, Plaintiff was involved in a car accident while driving a Volvo XC70 (allegedly transferred to him by his father in Louisiana on January 5, 2022), and UFCC determined his vehicle was a total loss. Am. Compl. ¶ 30. To calculate the settlement amount, UFCC used a vehicle valuation report prepared by its third-party vendor, Mitchell. *Id.* ¶¶ 33–34; Valuation Report. The Valuation Report used the average cost of three comparable vehicles that were recently offered for sale at dealerships in the same geographic area as the principal garaging ZIP

5

code of the loss vehicle.³ Valuation Report at 3 (listing three comparable vehicles within a 325-mile radius of the principal garaging ZIP code). All three comparable vehicles were listed for sale, but had not yet sold. *See id.* (reflecting list prices for comparable vehicles 1–3). Because vehicles typically sell for amounts less than their list prices, Mitchell applied a PSA to the comparable vehicles' list prices to account for "consumer purchasing behavior (i.e., negotiating a different price than the listed price)" to estimate their value. *Id.* at 5–6.

Plaintiff disagreed with the value of the settlement UFCC offered him. So, pursuant to the Policy, UFCC demanded appraisal to determine the loss amount in March 2022, and again on August 10, 2022, when it identified its selected appraiser. *See* Morrison Decl. ¶¶ 6–7; Ex. 2, August 10, 2022 letter from UFCC's counsel to Plaintiff's counsel ("August 10, 2022 Letter"). Plaintiff, however, refused to select his own appraiser or otherwise participate in the appraisal process.

B. **Plaintiff's Claims**

On October 27, 2022, Plaintiff filed the operative Amended Complaint against Progressive Casualty and UFCC in the Superior Court in Hancock County, Maine, which Defendants timely removed to this Court. *See* Am. Compl.; Notice of Removal, Dkt. 1. Plaintiff challenges UFCC's offer of payment to resolve his insurance claim, alleging the PSA is "contrary to appraisal standards" and "has no rational basis" in the current used car industry. Am. Compl. ¶¶ 42–43.

In Count 1, Plaintiff alleges that UFCC violated the UCSPA by "inserting [PSAs] into its Valuation Reports," thereby "knowingly misrepresenting to an insured pertinent information related to the coverage at issue" and failing to "effectuate prompt, fair, and equitable settlement of claims." Am. Compl. ¶¶ 56–57. In Count 2, Plaintiff contends that UFCC violated the UTPA

---

³ Because, at the time of collision, "the vehicle was in the process of being transferred" from Plaintiff's father in Louisiana, the Valuation Report listed the vehicle as principally garaged in Louisiana. *See* Am. Compl. ¶¶ 25–26; Valuation Report at 1 (listing vehicle ZIP code as 70809).

6

because "Defendant's actions to the Plaintiff and Class . . . are unfair and deceptive trade practices." *Id.* ¶ 60. In Count 3, Plaintiff asserts a claim for conversion, alleging that he and members of the putative class "had an interest in payment of the full value of their vehicle" and that "Progressive refused to pay . . . the money they were entitled to." *Id.* ¶¶ 64–65.

## LEGAL STANDARD

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations as true and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To be facially plausible, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court must accept allegations of fact as true, the Court must "first[] isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Zell v. Ricci*, 957 F.3d 1, 8 (1st Cir. 2020) (quotation omitted). "In adjudicating a Rule 12(b)(6) motion, a district court may consider not only the complaint but also any documents annexed to it (the authenticity of which are unchallenged) and other such documents that are sufficiently referenced and/or relied upon in the complaint." *Rivera v. Kress Stores of P.R., Inc.*, 30 F.4th 98, 102 (1st Cir. 2022).

## ARGUMENT AND CITATION TO AUTHORITY

### A.   Plaintiff's Lawsuit is Barred By His Failure to Submit to Appraisal

As a preliminary matter, Plaintiff agreed that in the event of a dispute with UFCC "on the amount of a loss, then [UFCC] or [the insured] may demand an appraisal of the loss. Within 30 days of any demand for an appraisal, each party shall notify the other party of that appraiser's identity. The appraisers will determine the amount of loss." Policy at 21. This provision obligates either UFCC or the insured to participate in appraisal upon the demand of the other.

7

UFCC demanded appraisal in March 2022, and again on August 10, 2022. *See* Morrison Decl. ¶¶ 6–7; August 10, 2022 Letter. But Plaintiff has refused to participate in appraisal or select his own appraiser. Critically, the Policy also provides that UFCC "may not be sued unless there is full compliance with all the terms of this policy." Policy at 27. Plaintiff's participation in the appraisal process is thus a precondition to his ability to pursue any lawsuit challenging UFCC's valuation of his loss. *See Auburn Water Dist. v. Ins. Co. of N.A.*, 312 A.2d 174 (Me. 1973) (entering judgment for the insurer where the insured failed to comply with a condition precedent to indemnification under the insurance policy). The Court should accordingly dismiss Plaintiff's claims.

It is well-established in Maine that appraisal clauses in insurance contracts are enforceable for purposes of determining the amount of a loss. As the Maine Law Court held over a century ago in a case involving a similar appraisal provision:

> It has been long established by authority both in this country and in England that if parties stipulate in contracts of insurance and other similar contracts to submit to arbitration the question of the amount of damage or any similar matters that do not go to the root of the action, it is entirely competent for them to make such an agreement a condition precedent to the right of action.

*Dunton v. Westchester Fire Ins. Co.*, 71 A. 1037 (Me. 1908). Thus, if the parties agree to appraisal as a precondition to suit, "it will be upheld by the courts and no action can be maintained upon the contract without proof on the part of the plaintiff that he has fulfilled the stipulation in the contract." *Id.*

That is precisely what the parties agreed to here. Plaintiff agreed that if there was a dispute over the amount of a loss, he would submit to appraisal if UFCC demanded it. Compliance with the Policy terms—including the appraisal provision—is a condition precedent to taking legal

action against UFCC. UFCC demanded appraisal and, to date, Plaintiff has refused to participate in the appraisal process. Accordingly, the Court should dismiss Plaintiff's Amended Complaint.

## B. The Amended Complaint Fails to State a Claim

### 1. *Plaintiff Fails to State a Claim Under the UCSPA*

Even if Plaintiff's lawsuit were not barred, his Amended Complaint should still be dismissed for failure to state a claim. To plead a violation of the UCSPA, Plaintiff must allege that he was "injured" by his insurer's "knowing[] misrepresent[ation] [of] pertinent facts or policy provisions relating to coverage at issue" or failure "without just cause . . . to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear." Me. Rev. Stat. Ann. tit. 24-A, § 2436-A(1)(A), (1)(E). "Knowing misrepresentation means to be aware that you are misrepresenting something. In other words, you know the policy says one thing and means one thing but you tell the insured something else . . . ." *Saucier v. Allstate Ins. Co.*, 742 A.2d 482, 489 (Me. 1999). To show a knowing misrepresentation, a plaintiff must demonstrate "'something more than a mere dispute between the insurer and insured as to the meaning of certain policy language' or the amount of certain line items" in estimating the value of the claim. *See Cook v. USAA Cas. Ins. Co.*, 2020 WL 556394, at *12 (Feb. 4, 2020) (quoting *Curtis v. Allstate Ins. Co.*, 787 A.2d 760, 767 (Me. 2002)) (granting summary judgment to insurer on a USCPA claim).

    a.    Plaintiff Has Not Alleged UFCC Knowingly Misrepresented Facts Relating to Coverage

Plaintiff's Amended Complaint is devoid of any non-conclusory allegations that UFCC made any knowing misrepresentation of fact about the coverage afforded under the Policy. Under the UCSPA, "[k]nowing misrepresentation means . . . you know the policy says one thing and means one thing but you tell the insured something else . . . ." *Saucier*, 742 A.2d at 489. Plaintiff here alleges only that UFCC made a "knowing[] misrepresent[ation]" by paying "less than the full

9

market value" of his vehicle. Am. Compl. ¶ 56. But that is not an allegation of a misrepresentation of fact—much less any fact about coverage under the Policy. (Nor could Plaintiff assert that UFCC made a misrepresentation about coverage since UFCC promptly covered Plaintiff's claim.) Plaintiff's generic allegation that UFCC failed to pay the amount due under his Policy cannot serve as the basis for a UCSPA claim.

Moreover, even if Plaintiff had alleged some misrepresentation regarding coverage related to the PSA, Plaintiff has not alleged that any misrepresentation was "knowing." To the contrary, the Amended Complaint makes clear that "Progressive relied on Mitchell's" Valuation Report produced in valuing Plaintiff's total loss. *See* Am. Compl. ¶ 9; *see also id.* ¶ 8 ("Progressive hired another company, Mitchell, to appraise Plaintiff's total loss claims [sic]."); ¶ 33 ("Progressive's standard practice involves obtaining a 'Vehicle Valuation Report' from the Defendant's contractor, often if not always Mitchell . . . ."). As Plaintiff notes, it is the third-party vendor, "Mitchell[,] [who] applied [PSAs]." *Id.* ¶ 38. Moreover, Plaintiff's Amended Complaint is devoid of any non-conclusory allegations tying UFCC to the insertion of PSAs on Plaintiff's Valuation Report, or the manner in which the PSA is calculated or applied. And other than bare conclusions, Plaintiff does not allege that UFCC applied PSAs it *knew* to be inaccurate. Accordingly, Plaintiff fails to plausibly allege a "knowing misrepresentation," which is also fatal to his UCSPA claim.

        b.    <u>Plaintiff Fails to Plausibly Allege That UFCC's Settlement Offer was "Without Just Cause"</u>

Plaintiff's UCSPA claim under subsection (A)(1)(E) of the UCSPA fares no better. That subsection proscribes, "[w]ithout just cause, failing to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear." Me. Rev. Stat. Ann. tit., 24-A, § 2436-A(1)(E). Plaintiff fails to plausibly allege that any settlement offer was less than fair or equitable and "without just cause."

10

*First,* despite threadbare assertions that UFCC failed to "effectuate prompt, fair and equitable settlement of claims" by offering "less than the full market value of his vehicle," Am. Compl. ¶ 57, Plaintiff fails to allege (1) the amount UFCC offered for his total-loss vehicle or (2) the ACV of his vehicle.[4] The Federal Rules require more than conclusory assertions alongside a "'formulaic recitation'" of the elements of a UCSPA claim. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Absent such allegations, the Court cannot evaluate the delta between the settlement offer and the alleged ACV to determine whether Plaintiff has plausibly alleged UFCC's offer was unfair or inequitable. For example, if an insurer offered an insured $10,000 to settle his claim, but the insured believed the claim was worth $10,001, there could be no plausible allegation that the insurer "failed to effectuate a prompt, fair, and equitable settlement."

*Second*, Plaintiff also fails to plausibly allege that any settlement offer was made "without just cause." The UCSPA defines "without just cause" as refusing "to settle claims without a reasonable basis to contest liability, the amount of any damages or the extent of any injuries claimed." Me. Rev. Stat. Ann. tit. 24-A, § 2436-A(2). As an initial matter, Plaintiff does not allege that UFCC contested "liability, the amount of any damages or the extent of any injuries" at all. To the contrary, Plaintiff alleges that UFCC promptly covered the claim. And there is no assertion in the Amended Complaint that Plaintiff made a demand for some additional damages or injuries that UFCC refused to cover. In other words, Plaintiff has not alleged that UFCC "contest[ed]" coverage or the amount of any damages claimed because Plaintiff did not identify his damages to UFCC in the first place.

---

[4] As discussed above, not only has Plaintiff failed to allege the ACV of his vehicle, he has also repeatedly refused to participate in a contractual appraisal process specifically designed to resolve disputes over ACV.

Nor does Plaintiff allege that UFCC lacked a reasonable basis for its valuation of Plaintiff's vehicle. To the contrary, UFCC relied on sophisticated valuation software provided by a third-party vendor—Mitchell—in estimating the value of Plaintiff's vehicle. Am. Compl. ¶ 9 ("Progressive relied on Mitchell's . . . value."); *see also id.* ¶¶ 8, 33, 38. Plaintiff also does not allege that reliance on a well-reputed vendor like Mitchell is somehow improper or unreasonable; nor could he, given that Plaintiff's Policy expressly allows UFCC to rely on a software developed by a third-party. *See* Policy at 24. Thus, Plaintiff fails to allege UFCC lacked a "reasonable basis"—and therefore "just cause"—for its settlement offer. The Court should dismiss Plaintiff's UCSPA claim accordingly.

      c.      <u>Plaintiff Fails to Allege Injury Caused by the PSA</u>

The UCSPA provides a private right of action to "[a] person *injured* by" an unfair claims settlement practice. Me. Rev. Stat. Ann. tit., 24-A, § 2436-A(1) (emphasis added). Plaintiff here has failed to plausibly allege any injury. Specifically, Plaintiff's generic assertion that UFCC improperly calculated ACV due to application of the PSA does not constitute a plausible allegation that Plaintiff was offered less than ACV for his total loss. At most, Plaintiff has alleged the amount of the PSAs applied to three comparable vehicles' list prices in Plaintiff's Valuation Report, and claims he is entitled to recover the average of those amounts. *See* Am Compl. ¶ 38. But simply identifying the amount of a PSA, or the average of the PSAs, does not support the inferential leap that UFCC offered Plaintiff less than the ACV of his vehicle. And that the PSA reduced the amount Plaintiff would have otherwise been offered is a matter of basic arithmetic—it has no bearing on what amount Plaintiff was actually owed, or whether that amount was less than what UFCC offered. Critically, Plaintiff does not allege what he believes was the ACV of his vehicle immediately leading up to the total-loss accident. He simply asks the Court to assume that adding

back the average amount of the PSAs would result in ACV. But that assumption does not hold water.

The Valuation Report underscores this point. Two of the three comparable vehicles on which the Valuation Report relied had list prices *lower than* the ultimate market value of Plaintiff's total loss vehicle. Specifically, the first comparable vehicle had a list price of $11,569 and the third had a list price of $12,700. Valuation Report at 4. The report calculated the market value of Plaintiff's vehicle at $12,824.37. *Id.* at 2. So UFCC could have used just those two comparable vehicles, *not applied a PSA*, and the value of Plaintiff's vehicle would have been *lower*. Plaintiff has thus failed to sufficiently allege injury flowing from Mitchell's use of PSAs, a prerequisite for a claim under the UCSPA.

### 2. *Plaintiff Fails to State a Claim under the UTPA*

Plaintiff has also failed to plausibly allege that UFCC violated the UTPA. The UTPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Me. Rev. Stat. Ann. tit. 5, § 207. As this court has noted, "the words 'unfair' and 'deceptive' are not defined in the Maine UTPA" and "the applicable definitions have been supplied by the Maine Law Court." *James v. GMAC Mortg. LLC*, 772 F. Supp. 2d 307, 322 (D. Me. 2011). Specifically, the Maine Law Court, has held that to constitute an unfair practice, "the act or practice: (1) must cause, or be likely to cause, substantial injury to consumers; (2) that is not reasonably avoidable by consumers; and (3) that is not outweighed by any countervailing benefits to consumers or competition." *State v. Weinschenk*, 868 A.2d 200, 206 (Me. 2005). Deceptive acts involve "material misrepresentation[s]," omissions, or practices that are "likely to mislead consumers acting reasonably under the circumstances." *Id.* To constitute a material misrepresentation, an act or practice must involve "information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Id.* Finally, like the

13

UCSPA, the UTPA confers a private right of action only to persons who "suffer[] any loss of money or property, real or personal, as a result of" an unfair or deceptive practice. Me. Rev. Stat. Ann. tit. 5, § 213(1).

*First*, as an initial matter, like Plaintiff's UCSPA claim, Plaintiff has failed to sufficiently allege any injury or "loss of money or property" flowing from application of the PSA as required to state a claim under the UTPA. *See* Section B(1)(c) *supra*.

*Second*, Plaintiff fails to plausibly allege UFCC engaged in "unfair and deceptive trade practices," relying instead on the threadbare and conclusory allegation that "Defendant's actions . . . are unfair and deceptive trade practices prohibited by 5 M.R.S. § 207." Am. Compl. ¶ 60. Specifically, the Amended Complaint fails to allege a single representation that could form the basis for a UTPA claim. While Plaintiff cites Progressive's website, which highlights, among other things, that Progressive provides "superior claims service" and "supports [insureds] every step of the way," *id*. ¶¶ 17–21, not just any representation on behalf of a company will do. *C.f. F.T.C. v. Direct Marketing Concepts, Inc.*, 624 F.3d 1, 11 (1st Cir. 2010) (defining "un-actionable puffery" as "merely exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely" in context of FTC action for unfair and deceptive advertisements (quotation omitted)). For starters, none of the statements cited by Plaintiff relate—in any way—to the manner in which UFCC would value total loss claims. It is simply untenable to claim that these general statements, completely unrelated to the allegedly unfair or deceptive practice, constitute a "material misrepresentation" under the UTPA. Relatedly, Plaintiff has not alleged that, but for such representations, he would have made a different choice, or acted differently, with respect to his choice of automobile insurance. *See Weinschenk*, 868 A.2d at 206 (noting that a material

misrepresentation must include information "important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product").

Moreover, as the Amended Complaint makes clear, the PSA—including the amount and reason for the adjustment—were expressly disclosed to Plaintiff in his Valuation Report. *See generally* Valuation Report. Plaintiff fails to allege exactly what material information about the PSA—the only practice Plaintiff takes issue with—was omitted from his Valuation Report. And, again, he fails to allege how the PSA, or any representations or omissions regarding the PSA, had any impact on his actions. In other words, Plaintiff has not plausibly alleged that UFCC's conduct was "unfair" or "deceptive" under the standards articulated by the Maine Law Court. *See Weinschenk*, 868 A.2d at 206. The only "unfair" conduct Plaintiff alleges is, at most, his disagreement with the amount UFCC offered to settle his total loss claim. But alleging a run-of-the-mill valuation dispute simply does not state a claim under the UTPA, and Plaintiff's claim should be dismissed accordingly.

### 3. *Plaintiff Fails to State a Claim for Conversion*

To prevail on a claim for conversion of money, Plaintiff must show that he "had a property interest in the money, the right to its possession at the time of the alleged conversion and, if [Defendant] acquired possession rightfully, a demand by [Plaintiff] for possession and a refusal by [Defendant] to surrender." *Keyes Fibre Co. v. Lamarre*, 617 A.2d 213, 214 (Me. 1992). But money carries a "distinctive quality" that "diff[ers] from other kinds of property" for purposes of a conversion claim. *Hazelton v. Locke*, 71 A. 661, 662–63 (Me. 1908) ("From its nature the title to money passes by delivery and its identity is lost by being changed into other money or its equivalent in the methods ordinarily used in business for its safe keeping and transmission."). Thus, in Maine, there is no claim for the conversion of money where the alleged conversion is simply a claim for damages stemming from an alleged breach of contract. *Id.* at 663.

Applying this rule, this Court granted a Rule 12(b)(6) motion on a claim for the conversion of commissions owed under a telecommunications services contract. *Innovative Network Sols., Inc. v. Onestar Commc'n, LLC*, 283 F. Supp. 2d 295, 301 (D. Me. 2003). Citing the Maine Law Court's *Hazelton* decision, the court dismissed the plaintiff's conversion claim because "the plaintiff has a contract remedy for its claimed damage, which it has asserted in this case" and noting that "Maine Law does not recognize a duplicative tort remedy." *Id.*; *see also Hazelton*, 71 A. at 663 (holding that the "[m]ere failure to deliver such property in specie on demand would not be technical conversion" but might be ground for a contract action).

Here, Plaintiff alleges: "The Plaintiff, and the Class, by filing a claim with Progressive, made demand for the money they were *entitled to under their policy* . . . . Progressive refused to pay the Plaintiff and the Class the money they were entitled to . . . ." Am Compl. ¶¶ 64–65 (emphasis added). In other words, Plaintiff's claim is for money he was "entitled to under [his] policy." *Id.* ¶ 64. Because Plaintiff "has a contract remedy for [his] claimed damage," he lacks a claim for conversion. *See Innovative Network Sols.*, 283 F. Supp. 2d at 301. Indeed, Plaintiff's allegation that UFCC "refused to pay" money to which he was allegedly entitled on "demand" is a "[m]ere failure to deliver such property in specie on demand," which cannot form the basis of a conversion claim under Maine law. *See Hazelton*, 71 A. at 662–63. The Court should dismiss Plaintiff's conversion claim accordingly.

**C.     The Claims Against Progressive Casualty Should Be Dismissed**

As discussed above, *see supra* n.1, the Amended Complaint purports to refer to Progressive Casualty and UFCC collectively as "Defendant," "Defendants," and "Progressive." Yet the sole allegation against Progressive Casualty is that it owns the "Progressive" trademark. Am. Compl. ¶ 2. The Amended Complaint thus represents a "variation of shotgun pleading," and is insufficient as a matter of law. *See Ames v. Dep't of Marine Res. Com'r*, 256 F.R.D. 22, 30–31 (D. Me. 2009)

16

(explaining that allegations that "every defendant did the exact same conduct and said the exact same misrepresentations" are "a prime example of a variation of shotgun pleading" that "force[] [defendants] to respond to the allegations of the complaint without any clarity as to the portions of the complaint that target them" and "tax the court").

Even assuming, *arguendo*, that Plaintiff made specific allegations against Progressive Casualty, his claims should still be dismissed because, as Plaintiff alleges and the declaration page makes clear, the Policy was underwritten by UFCC. *See* Am. Compl. ¶ 2; Policy at 1 (Declaration Page listing UFCC). Thus, per Plaintiff's own allegations, UFCC, not Progressive Casualty, was Plaintiff's insurer and the entity that engaged in the allegedly improper conduct—*i.e.*, making an offer to settle Plaintiff's total loss claim based on a valuation that included the allegedly improper PSA. Plaintiff fails to allege a single fact connecting Progressive Casualty with the underwriting of his Policy or the handling of his claim by UFCC. As such, Plaintiff's claims against Progressive Casualty should be dismissed. *See Pamel Corp. v. P.R. Highway Auth.*, 621 F.3d 33, 36 (1st Cir. 1980) (holding that a complaint failed to state a claim given the "glaring defect [] that it fails to connect the defendant with the wrongs alleged to have been suffered").

**D.     Alternatively, the Court Should Stay Proceedings and Compel Appraisal**

If the Court declines to dismiss Plaintiff's Amended Complaint under Rule 12(b)(6), Defendants respectfully request that it compel appraisal to determine the amount of Plaintiff's loss—as provided for in the Policy—and stay the proceedings. *See Liberty Bell Moving & Storage, Inc. v. Transguard Ins. Co. of Am., Inc.*, 2018 WL 6182048 (D. Me. Nov. 27, 2018) (compelling appraisal and staying proceedings to resolve a dispute over the value of damaged real property).

## **CONCLUSION**

For the foregoing reasons, this Court should grant the Defendants' motion to dismiss the Amended Complaint with prejudice, or in the alternative, compel appraisal and stay the proceedings.

Respectfully submitted this 21st day of December, 2022.

*/s/ Thomas S. Marjerison, Esq.*
Thomas S. Marjerison, Esq.
Bar No. 7836
tmarjerison@nhdlaw.com
NORMAN, HANSON & DETROY, LLC
2 Canal Plaza
P.O. Box 4600
Portland, ME 04112
P: (207) 774-7000

Jeffrey S. Cashdan*
jcashdan@kslaw.com
Zachary A. McEntyre*
zmcentyre@kslaw.com
J. Matthew Brigman*
mbrigman@kslaw.com
Allison Hill White*
awhite@kslaw.com
KING & SPALDING LLP
1180 Peachtree St. NE
Atlanta, Georgia 30309
P: (404) 572-4600
F: (404) 572-5140

Julia C. Barrett*
jbarrett@kslaw.com
KING & SPALDING LLP
500 W. 2nd Street
Suite 1800
Austin, Texas 78701
P: (512) 457-2000
F: (512) 457-2100

*Counsel for Defendants*

**Pro hac vice* motions forthcoming*

## CERTIFICATE OF SERVICE

    I hereby certify that on December 21, 2022, a copy of the foregoing DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO COMPEL APPRAISAL AND STAY THE PROCEEDINGS AND MEMORANDUM IN SUPPORT was electronically filed through the Court's ECF system. Notice of this filing will be sent by operation of the Court's ECF system to all counsel of record.

                                                      */s/ Thomas S. Marjerison, Esq.*
                                                      Thomas S. Marjerison, Esq.