**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MAINE**

| | |
|---|---|
| MATTHEW THURSTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket No. 1:22-cv-00375-NT |
| | ) |
| PROGRESSIVE CASUALTY | ) |
| INSURANCE COMPANY, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM IN OPPOSITION**
**TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO COMPEL APPRAISAL AND STAY PROCEEDINGS**

Progressive uses an arbitrary "**Projected Sold Adjustment**" in its appraisals to deceive customers and make them believe their totaled vehicles are worth less than their true value. Progressive regularly pays Maine consumers less money for those totaled vehicles than they are entitled to be paid. Mr. Thurston's Complaint is not a dispute over a legitimate appraisal of any one car, but about Progressive's systematic use of an arbitrary adjustment to shortchange Maine consumers. Progressive argues, in its motion, that the Complaint does not adequately explain what is summarized in the preceding three sentences. The allegations here are straightforward. Progressive's Motion should be denied.

Nor does Progressive's claim that the appraisal process has not played out provide a reason to delay the resolution of this action. Thurston contends that Progressive has no right under the contract, or Maine law, to add a category of "**Projected Sold Adjustment**" so an appraisal would not address, or impact, what is at issue in this suit. Additionally, the binding appraisal clause is void under the Maine Unfair Trade Practices Act, because the clause would deny Maine consumers the rights to injunctive relief and to a jury trial expressly granted by the Act.

1

## RELEVANT FACTS

"Progressive" and "Progressive Group of Insurance Companies," (collectively referred to, along with UFFC, herein after as "Progressive") <u>operated together</u> to market and sell an automobile insurance policy to Matthew Thurston. First Amended Class Action Complaint ("Complaint"), ¶¶ 1-4, 13-21. The policy promised to pay Mr. Thurston the fair market value of his vehicle in the event of a total loss. *E.g., id.*, ¶¶ 3, 28. Progressive did not keep that promise to Thurston. When Mr. Thurston made a claim for this coverage, Defendants did not offer to pay him the car's fair market value. *Id.*, ¶¶ 5-10, 29-31. Instead, as part of their standard operating procedure, Defendants offered to pay something less. *Id.*

Defendants justified their reduced offer by including a Vehicle Valuation Report ("Appraisal" Complaint, Exhibit A) written by their subcontractor, Mitchell International, Inc. ("Mitchell"), and provided to Mr. Thurston. *Id.*, ¶¶ 33-34. The Defendants **"conspire[d]"** with Mitchell to have the Appraisal present an offer lower than actual value. *Id.*, ¶ 7. **In "coordination" with Mitchell**, Progressive "systematically, and without any reasonable justification, depresses the appraised value of all total loss vehicles." *Id.*, ¶ 8; *see also* ¶¶ 32-33. The amount that Defendants offered to Mr. Thurston was his car's fair market value ***less*** a "projected sold adjustment" ("PSA"). *Id.*, ¶¶ 36-47. Defendant's use of this PSA is at issue in this lawsuit.

The Defendants via Mitchell initially perform an accurate appraisal of total loss vehicles by averaging the advertised price of a number of similar vehicles in the relevant geographic market ***adjusted by objective criteria***, such as differences in equipment, mileage, and the like – as is customary in the appraisal trade – to reach a base value for the subject vehicle. *Id.*, ¶¶ 36-37. Defendants, however, then go astray by using the PSA to reduce this accurate and objective valuation to reach its

2

offered price. *Id.*, ¶ 41. The PSA is supposedly meant to reflect an amount that consumers would negotiate off the advertised price of the comparable vehicle. *Id.*, ¶ 39. In truth, however, regardless of its represented purpose, the PSA amount is a ***subjective and arbitrary*** deduction which is inserted in the Appraisal solely to mislead insureds as to the value of their vehicles to induce them accept a reduced offer for their loss. *Id.*, ¶¶ 38-40. Especially in the current environment of limited vehicle availability and used cars selling for a premium, a "PSA" cannot be rationally justified. *Id.*, ¶ 42. Further, Mr. Thurston alleges that its use violates industry standards. *Id.*, ¶¶ 43-44.

Thus, the Complaint alleges that the Defendants already completed a vehicle appraisal, and the accuracy of the base figures used is not in contention. A further appraisal is unnecessary and would serve no purpose. The issue here is the permissibly and lawfulness of Defendants' use of the PSA to misrepresent vehicle values and shortchange policy holders.

I. **LAW & ARGUMENT**

A. **RULE 12(b)(6) LEGAL STANDARD**

This Court has aptly stated the standard for a Rule 12(b)(6) motion:

**A motion to dismiss for failure to state a claim** under Federal Rule of Civil Procedure 12(b)(6) **tests the "legal sufficiency" of a complaint**. *Gomes v. Univ. of Me. Sys.,* 304 F.Supp.2d 117, 120 (D.Me.2004). In deciding such a motion, the Court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in Plaintiff's favor. *Gargano v. Liberty Int'l Underwriters, Inc.*, 572 F.3d 45, 48 (1st Cir.2009).

**The general rules of pleading require "a short and plain statement of the claim showing that the pleader is entitled to relief."** Fed.R.Civ.P. 8(a)(2). However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation omitted). Thus, faced with a motion to dismiss, **the Court must examine the factual content of the complaint and determine whether it can reasonably infer "that the defendant is liable for the misconduct alleged."** *Id.* In distinguishing sufficient from insufficient pleadings, which is "a context-specific task," **the Court must "draw on its judicial experience and common sense**." *Id.* at 1950.

3

*Bennett v. Roark Capital Group, Inc.*, 738 F.Supp.2d 157, 158-159 (D.Me.2010) [Emphasis added].

In addition, it is axiomatic that in ruling on a Rule 12(b)(6) motion, a court is confined the four corners of the challenged pleading. Although a court may consider documents attached to a pleading, a court may not consider outside materials such as the affidavit and documents attached to the Motion. *O'Brien v. DiGrazia,* 544 F.2d 543, 545 (C.A. 1, 1976).

Based on the foregoing, the Motion is procedurally improper. It relies on materials and representations of fact outside the Complaint to support its argument. Because these materials cannot be properly considered, the Motion must be DENIED.

**B.     APPRAISAL IS INAPPLICABLE TO MR. THURSTON'S CLAIMS**

Initially, Defendants ask the Court to dismiss the Complaint as noncompliant with an "appraisal" clause in the applicable policy that provides:

> If we cannot agree with you **on the amount of a loss**, then we or you may demand an appraisal of the loss. Within 30 days of any demand for an appraisal, each party shall appoint a competent appraiser and shall notify the other party of that appraiser's identity the appraisers will determine the amount of loss. If they fail to agree, the disagreement will be submitted to a qualified umpire chosen by the appraisers. If the two appraisers are unable to agree upon an umpire within 15 days, we or you may request that a judge of a court of record, in the county where you reside select an umpire. The appraisers and umpire will determine the amount of loss. The amount of loss agreed to by both appraisers, or by one appraiser and the umpire, will be binding. You will pay your appraiser's fees and expenses. We will pay our appraiser's fees and expenses. All other expenses of the appraisal, including payment of the umpire if one is selected, will be shared equally between us and you. Neither we nor you waive any rights under this policy by agreeing to an appraisal.

Policy (Doc. 12-2) at 21. First, this disagreement is not about the "amount of a loss"; it is about Progressive's systematic use of a subjective and arbitrary adjustment in its claim settlements to depress the appraised value of vehicles they insure when it comes time to pay. An appraisal would not change matters. Courts have addressed this exact argument by Progressive, over the exact same contractual language, and have ruled against Progressive.

4

> [Plaintff] denies that he must submit to the appraisal process as a condition of pursuing this lawsuit. **He argues that the dispute between the parties is not over the "amount of loss," but rather, whether Progressive may legally make the projected sold adjustments [PSA] at all**. Relying on the plain language of the appraisal clause, Plaintiff argues that the **parties do not dispute the "amount of loss,"** and Progressive's right to invoke the process, therefore, is not triggered. Furthermore, an **appraisal would be, according to Plaintiff, an "empty exercise,"** as there is no authority for the appraisers, or an umpire, to strike the projected sold adjustment step from the valuation process—essentially the relief Plaintiff seeks.
>
> The Court agrees. This is not a dispute over whether the calculated average of the comp vehicles' **PSAs** should be some amount other than $1008.70; as Plaintiff notes, neither party claims that anything about this sum is incorrect. Instead, **the gravamen of this lawsuit is whether Progressive may legally make the adjustments at all.** Indeed, there is no claim that an appraiser would—or even could—choose not to take a PSA deduction from the list prices of the comparable vehicles. Unless it did so, the appraisal would not obviate Stanizky's claim that any projected sold adjustment is illegal…. An appraisal would therefore be an empty exercise, at least for purposes of this lawsuit. **This conclusion conforms to other courts' interpretations of the appropriate role of the appraisal process in the insurance context, where the dispute is over a contract term, not the insurer's valuation of the loss.** See *Mercer Intern., Inc. v. US Fidelity and Guar. Co.*, 938 F. Supp. 680, 683 (W.D. Wa 1996)….

*Stanikzy v. Progressive Direct Insurance Company*, 2020 WL 2800711 (W.D.Wa.2020)(see Doc 21-1, page 23 in *Stanikzy* (*2:20-cv-00118-BJR)* for the same appraisal clause Progressive seeks to invoke in this case). Similarly, in *Delisfort* a court denied a request for an appraisal in a suit over similar insurance practices, when the actual issue was whether the insurer had a right to use a "betterment" deduction in measuring the value of a damaged vehicle:

> While it may be debatable whether this is an issue of coverage or simply a contract construction issue, the issue presented in the underlying action is not an issue of fact. There is no disputed issue of fact as to the amount of the loss (the total repair), nor does the appellant dispute the *amount* of the depreciation or "betterment" deduction that the insurance company took. **All she contests is the company's right to take such a deduction under the policy.**

*Delisfort v. Progressive Express Insurance Co.*, 785 So.2d 734, 735 (4th Dist.2001) [emphasis added]. See also *Sardinas v. Infinity Auto Insurance Company*, 2019 WL 7811165 (S.D.Fl.) (Issue of whether

5

compensation for certain expenses (document fees and registration fees) should be included in the loss calculation is not a dispute subject to appraisal.).

Progressive already performed an appraisal, and the parties do not currently dispute the core figures contained in the appraisal. They agree that the vehicle was a total loss; and Mr. Thurston does not dispute the comparable vehicle values in the Appraisal or the objective adjustments to those values. Mr. Thurston challenges here whether the Defendants are permitted under the policy and law to reduce these objective values with the PSA *for the purpose of* offering an arbitrarily reduced amount to him and others for their loss.

If the clause applied, its application in the context of a $600 dispute is oppressive to a consumer like Thurston. Under this clause, he must hire an appraiser and then potentially share in the costs of an umpire, all because Progressive chose to add a subjective and arbitrary deduction to the true value of his car. Its practical effect is to deny Thurston any realistic opportunity to contest Progressive adding an unwarranted subjective and arbitrary charge. Its inclusion, combined with Progressive's standard practice of offering less than the actual cash value of a car, may be a calculated effort by Progressive to, without just cause, fail to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear. If so, Thurston has the right to contest Progressive's actions under 24-A M.R.S.A. § 2436-A (1)(e).

The enforcement of the appraisal clause, as argued by Progressive, would deny Thurston rights granted by the Maine Unfair Trade Practices Act (UTPA). The UTPA grants a right to resolve allegations of unfair and deceptive trade practices in court. 5 M.R.S. § 213 It says that injured consumers "may bring an action either in the Superior Court or District Court for actual damages, restitution and for such other equitable relief, including an injunction, as the court determines to be necessary and proper," and that "[t]here is a right to trial by jury in any action brought in Superior

Court under this section.". Id. "Any waiver by a consumer of the provisions [of the UPTA] is contrary to public policy and shall be unenforceable and void." 5 M.R.S. § 214.

The appraisal clause, with its resort to 'binding' determination of the issue of the amount of loss, would, if Progressive's argument were upheld, amount to an unlawful, and void, waiver of Mr. Thurston's rights to 1) pursue his request for injunctive relief under the UPTA  2) seek redress in a court of law 3) seek redress in front of a jury, and  4) would have the practical impact of denying Mainers the benefits of a class action. The appraisal, if interpreted as Progressive asks, would contradict the express rights granted by the UPTA and "if a contract provision is contrary to a mandatory statutory provision, it is void and unenforceable" *Molleur v. Dairyland*, 942 A.2d 1197, 1201 (Me. 2008); see also *Baldwin v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2:19-cv-00026-JDL (D. Me. Apr. 15, 2020) (ruling, on an motion to dismiss, that the question of whether a contract provision disclaiming responsibility by Merrill Lynch for tax advice was void as a waiver of consumer rights under the UPTA was a mixed question of fact and law best determined at trial or summary judgment stage.)

Accordingly, Mr. Thurston challenges the legal propriety of Progressive's use of the PSA to reduce coverage offers, not the dollar figure in his case, and the appraisal clause is inapplicable. To the extent the clause could be interpreted as applicable, that interpretation can be challenged under the Maine statute barring unfair claims practices or as unenforceable and void under the UTPA. Defendants' requests for dismissal based on the appraisal clause ***and to compel appraisal*** should, therefore, be DENIED.

    **C.**    **MR. THURSTON'S CLAIMS ARE WELL-STATED AND SUPPORTED BY SPECIFIC AND CREDIBLE ALLEGATIONS OF FACT.**

        **1.**    <u>**Progressive Misstates the Value of Consumers' Vehicles Using an Arbitrary Downward Adjustment**</u>

Maine's Unfair Claims Settlement Practices Act, 24-A M.R.S.A. § 2436-A, provides:

7

> 1. Civil actions. A person injured by any of the following actions taken by that person's own insurer may bring a civil action and recover damages, together with costs and disbursements, reasonable attorney's fees and interest on damages at the rate of 1 ½% per month:
> A. Knowingly misrepresenting to an insured pertinent facts or policy provisions relating to coverage at issue;
> ............................................................
> E. Without just cause, failing to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear.
> 2. Without just cause. For the purposes of this section, an insurer acts without just cause if it refuses to settle claims without a reasonable basis to contest liability, the amount of any damages or the extent of any injuries claimed.

> a. *Progressive Knowingly and Intentionally Misleads its customers by using the Projected Sold Adjustment to Lower the Value of Total Loss Vehicles to Less than their Actual Value*

Progressive's policy of inserting PSAs into their car appraisals creates a misleading and false impression that the value of a consumer's car is less than its true value. Additionally, Progressive's use of a deduction labeled as a PSA fails to inform the consumer that the PSA is not a proper deduction because in truth the PSA is arbitrary and subjective and designed to reduce Progressive's contractual obligation to consumers.

Exactly on point with the issue in this case, a Maine court has held that an insurer violates 24-A M.R.S.A. § 2436-A when it instructs agents to use an unpermitted factor or offset in calculating the amount to be offered to an insured as compensation for their loss:

> …the facts can and do support the jury's determination that Allstate, **through its claim analyst**, knowingly misrepresented its obligations pursuant to the terms of its policy. The jury could reasonably conclude that the claim analyst had been directed by Allstate to disregard its policy provisions and reduce claimant's damages by [impermissible factor]. Although the claim analyst testified that she had been instructed by Allstate that case law, specifically *Mullen,* had somehow abrogated the terms of its policies regarding the measure of offsets, the jury could have rejected this as a credible explanation of Allstate's approach and instead concluded that Allstate was aware of its obligations pursuant to the terms of its policy, but was simply representing otherwise to Saucier.

> Allstate argues that the claim analyst did not *consciously* misrepresent the terms of Saucier's policy because she was relying on directions from Allstate and its representatives. However, this reasoning would enable an insurer to avoid liability for

8

> misrepresentations as long as the spokesperson for the company was kept ignorant of the basis of the representations. This is clearly in contravention of the statute. **Allstate is responsible for the actions of all its representatives, even when one is merely repeating what another has told her regarding Allstate's policy provisions**.
> \*\*\*
> Having been correctly instructed on Allstate's obligations pursuant to its contract with Saucier, a jury could have found that it knowingly misrepresented the extent of its coverage, notwithstanding the fact that Allstate sought to justify its representations with case law.
>
> Additionally, because the meaning of policy provisions is always a question of law, Allstate's argument would, in effect, preclude any insurer from being held accountable for its misrepresentations unless the very same policy provisions had been previously construed by this Court. Until that point, the insurer could argue that its policy provisions all involved unresolved questions of law.

*Saucier, supra,* at 488-489.

Despite Thurston having alleged a *prima facie* case that Defendants violated 24-A M.R.S.A. §§ 2436-A(1)(A) & (E), Defendants argue that Mr. Thurston's claims fall short. First, Defendants contend that the Complaint contains no allegation that the Defendants made "knowing" misrepresentations. Motion, p. 9-10.[2] The Complaint alleges that the Defendants intentionally misrepresent vehicle fair market values with the PSA and that they misrepresented the nature of the PSA. Complaint, ¶¶ 7-8, 32-34, 38-42.

Progressive then proceeds to argue that the Complaint does not allege any intentional conduct by them because Mr. Thurston identified their agent, Mitchell, as the actual author of the Appraisals. Motion, p. 10. This argument is factually and legally false. Factually, it is wrong because the Complaint says that the Defendants **"conspire" and worked in "coordination" with Mitchell** to insert the PSA in the Appraisal in order to reduce the amounts it owes consumers for the fair

---

[2] Defendants further argue that Mr. Thurston's 11-page, 67-paragraph, Complaint contains only "threadbare" allegations. *E.g.,* Motion at 11. In making this argument, Defendants apparently read the allegations under each of Mr. Thurston's three counts in isolation from, and ignoring, the detailed factual pleadings of unlawful conduct in the initial 54 paragraphs of the Complaint.

9

market value of their automobiles. Complaint, ¶¶ 7-8 & 32-33. Legally, Defendants argument is wrong because the Defendants are "responsible for the actions of all [their] representatives." *Saucier, supra,* at 488-489.

b. *Since the Projected Sold Adjustment is Subjective, Arbitrary and Misleading, there is no Permissible or "Reasonable Basis" for Progressive to Use it*

Next, Defendants write that the Complaint contains no allegation of a lack of "just cause." Motion, pp. 10-12. "[A]n insurer acts without just cause if it refuses to settle claims without a reasonable basis" to contest the amount it owes a consumer. 24-A M.R.S.A. § 2436-A(2). The Complaint says that the PSA is subjective and arbitrary and that it is used solely to depress values and mislead insureds. Complaint, ¶¶ 38-40. One reasonable inference that can be drawn by these allegations is that, since the PSA is arbitrary, it lacks a reasonable basis, and so, does not establish a "just cause." The Complaint also says that use of the PSA violates industry standards (*id.*, ¶¶ 43-44) and that in the current marketplace (where used cars sell for a premium), a devalued appraisal based on alleged negotiation leverage cannot be rationally justified. *Id.*, ¶ 42. Thus, Mr. Thurston alleged Defendants' conduct lacks just cause in multiple ways.

c. *Being offered or Receiving Less Money than one is Entitled to is an Injury or Damage*

Finally, Defendants say that Mr. Thurston has not alleged any damage or injury. The Complaint says, "[w]ere it not for Defendant's deceptive and improper adjustments, the Plaintiff, and other similarly situated consumers in Maine, would have received a greater amount for their total loss vehicles from Progressive." *Id.*, ¶ 47. This is an allegation of specific damage. Further, this damage can be measured by the amount of the PSA and be shown as the damages for each and every transaction. *Id*, ¶¶ 49-51.

Based on the foregoing, Mr. Thurston has well-stated a cause of action under 24-A M.R.S.A. § 2436-A(1) against Progressive. Progressive's arguments to the contrary simply misstate or ignore the plain language of the Complaint.

### 2. Misstating the Value of a Car so that Consumers are Paid Less than they are Entitled to is Unfair and Deceptive.

Maine's Unfair Trade Practices Act, 5 M.R.S.A. § 207 provides:

Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful.

5 M.R.S.A. § 207 applies to the conduct of insurers. *Campbell v. First American Title Ins. Co.,* 644 F.Supp.2d 126, 133-134 (D.Me.2009); *see also* 24-A M.R.S.A. § 2436-A ("Nothing in this section prohibits any other claim or cause of action a person has against an insurer.").

Therefore, as applicable to the Defendants:

"A material representation, omission, act or practice involves information that is important to consumers and, hence, **likely to affect their choice of, or conduct** regarding, a product." *State v. Weinschenk,* 868 A.2d 200, 206 (Me.2005)….

The broad language of the UTPA indicates that a failure to disclose information may constitute a deceptive act even in the absence of a legal duty compelling disclosure. *MacCormack [v. Brower],* 948 A.2d [1259], 1261 n. 2 (material omission may be deceptive); *cf. Binette v. Dyer Library Ass'n,* 688 A.2d 898, 907 (Me.1996). Indeed, "[a]n act may be unfair or deceptive even when unknowingly perpetrated." *Binette,* 688 A.2d at 906….

*Id.* at 134. See also *Auto Europe, LLC v. Connecticut Indem. Co.*, 321 F.3d 60. (C.A.1, 2003) (An act may be deceptive even though the defendant had no purpose to deceive and acted in good faith.); *McGahey v. Federal National Mortgage Association*, 266 F.Supp.3d 421 (D.Me.2017) (An act or practice is deceptive if it is a material representation, omission, act, or practice that is likely to mislead consumers acting reasonably under the circumstances.).

Mr. Thurston alleges a *prima facie* claim that the Defendants violated 5 M.R.S.A. § 207 by misrepresenting the fair market values of vehicles and by misrepresenting the nature of the PSA as an objective and justifiable deduction or failing to disclose that it is an arbitrary and subjective

11

deduction designed solely to reduce coverage payments. In response, Defendants first repeat their baseless claim that the Complaint fails to aver damages. Motion, p. 14.

The Defendants also write, the Complaint "fails to allege a single representation that could form the basis for a UTPA claim." P. 14. This too, is untrue. The Complaint alleges that the Defendants intentionally misrepresent vehicle fair market values, as well as the nature of the PSA. Complaint, ¶¶ 7-8, 32-34, 38-42.

Lastly, the Defendants contend that no misrepresentation occurred because they "expressly disclosed" the PSA in the Appraisal. Motion, p. 15. This argument, again, overlooks the allegations in the Complaint. While it is true that the Appraisal discloses the use of the PSA and represents it as "an adjustment to reflect consumer purchasing behavior" (Complaint, ¶ 39 & Exhibit A), as detailed herein *supra*, the Complaint alleges that this representation is false and misleading. *Id.*, ¶¶ 38-44.

For the foregoing reasons, Mr. Thurston has stated a cause of action under 5 M.R.S.A. § 207; and once more, the Defendants' arguments to the contrary rely on an inaccurate recitation of the Complaint.

### 3. Defendants Have Committed Conversion

Mr. Thurston's third count is for conversion. Mr. Thurston says that the Defendants owe him claimed funds, but they have refused his demands for payment, constituting a conversion of those funds. Complaint, ¶¶ 63-67.

In response, the Defendants contend "there is no claim for the conversion of money where the alleged conversion is simply a claim for damages stemming from an alleged breach of contract," relying on a Maine case from 1908, grounded in the archaic precursors to claims for breach of contract and conversion, and a case from this District Court. Motion, pp. 15-16, citing *Hazelton v. Locke*, 71 A. 661, 662–63 (Me. 1908) and *Innovative Network Sols., Inc. v. Onestar Commc'n, LLC*, 283 F. Supp. 2d 295, 301 (D. Me. 2003).

Those cases, notwithstanding, the Supreme Judicial Court of Maine has held contrarily:

> Conversion may extend to certain types of intangibles, for example a right to payment, or a right to withdraw funds, that are 'customarily merged in or identified with some document,'... such as a promissory note or bank book.

*Northeast Coating Tech., Inc. v. Vacuum Metallurgical Co., Ltd.,* 684 A.2d 1322, 1324 (Me.1996), quoting Restatement (Second) of Torts, § 242); see also *Diamond Phoenix Corp. v. Small*, 2005 WL 1530264 (D.Me.) (citing *Northeast Coating*); *In re Wal-Mart Wage and Hour Employment Practices Litigation,* 490 F.Supp.2d 109 (D.Nev.2007) (citing *Northeast Coating*).

Moreover, the Reporter's Notes to the section of the Restatement quoted by *Northeast Coating* make clear that its rule applies to insurance policies, so that the denial of a claim for payment under a policy can give rise to a claim for conversion:

> The rule stated in Subsection (1) is applicable to promissory notes, bonds, bills of exchange, share certificates, and warehouse receipts, whether negotiable or non-negotiable. **It is also applicable to <u>insurance policies</u>** and to savings bank books.

Restatement (Second) of Torts, § 242, *Comment b* [emphasis added].

Accordingly, the Defendants proposition of law is incorrect. Mr. Thurston's claim for conversion of funds owed to him under a policy of insurance is recognized in Maine. Therefore, the Motion should be DENIED.

    d. **PROGRESSIVE IS RIGHTFULLY NAMED AS A PARTY.**

For their final argument, the Defendants ask the Court to dismiss the Progressive Casualty Insurance Company from this lawsuit. Motion, pp. 16-17. To justify this request, the Defendants once again inaccurately represent Mr. Thurston's allegations. Defendants write, "the sole allegation against Progressive Casualty is that it owns the "Progressive" trademark." *Id.*, p. 16. This is false.

As cited herein *supra*, Mr. Thurston alleges that both Defendants use the names "Progressive" and "Progressive Group of Insurance Companies," and they **operated together** to market and sell an insurance policy to him. Complaint, ¶¶ 1-4, 13-21. Mr. Thurston further says that the Defendants

"conspire" and operate in "coordination" with Mitchell to unlawfully impose the PSA as part of their systematic unlawful business practices. (*Id.*, ¶¶ 7-8). Hence, Mr. Thurston has well-stated a claim against Progressive for its own conduct.

Under the standard for granting a Rule 12(b)(6), the Defendants are not permitted to rewrite Mr. Thurston's allegations so that they will be narrowly construed, as it attempts to do throughout the Motion. Rather, "[i]n deciding such a motion, the Court must accept as true all well-pleaded factual allegations in the complaint **and draw all reasonable inferences in Plaintiff's favor**." *Bennett, supra,* 738 F.Supp.2d at 158-159, citing *Gargano, supra*, 572 F.3d at 48. Hence, the Court should view the Defendants' request for Progressive's dismissal as an improperly based on inaccurate rearticulation of Mr. Thurston's claims and DENY the motion.

## II.  CONCLUSION

For the reasons set forth above, the Motion should be denied because (A) "appraisal" is inapplicable to Mr. Thurston's claims, (B) the Complaint lays out straightforward causes of action, and (C) the Motion relies on facts, affidavits and documents outside the pleadings and is procedurally improper.

WEHREFORE, Mr. Thurston asks this Court to DENY the Motion.

Dated: January 25, 2022                          /s/     John Z. Steed
                                                 John Z. Steed, Esq. #5399
                                                 Island Justice
                                                 P.O. Box 771
                                                 Stonington, ME 04681
                                                 (207) 200-7077
                                                 john@islandjusticelaw.com

CERTIFICATE OF SERVICE

      I hereby further certify that on January 25, 2023, I electronically filed the foregoing Memorandum using the CM/ECF system which will send notification of such filing to the following:

*ALLISON HILL WHITE*
*JAMES MATTHEW BRIGMAN*
*JEFFREY S. CASHDAN*
*JULIA C. BARRETT*
*THOMAS S. MARJERISON*
*ZACHARY A. MCENTYRE*

                                        /s/ John Z. Steed
                                        John Z. Steed, Esq.