## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| MATTHEW THURSTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket No. 1:22-cv-00375-NT |
| | ) |
| PROGRESSIVE CASUALTY | ) |
| INSURANCE COMPANY and | ) |
| UNITED FINANCIAL CASUALTY | ) |
| COMPANY, | ) |
| | ) |
| Defendants. | ) |

## ORDER ON MOTION TO DISMISS
## OR TO COMPEL APPRAISAL AND STAY PROCEEDINGS

Before me is the Defendants' Motion to Dismiss or, in the Alternative, to Compel Appraisal and Stay the Proceedings (ECF No. 12). For the reasons stated below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## FACTUAL BACKGROUND[1]

On January 21, 2022, Plaintiff Matthew Thurston's vehicle—a 2012 Volvo XC70—was badly damaged in a collision. First Am. Class Action Compl. ("**Compl.**")

---

[1] These facts are drawn from the allegations in the Complaint, which I take as true for the purposes of deciding a motion to dismiss, as well as the Vehicle Valuation Report attached to the pleadings. *See Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021). In addition, the Defendants submit three documents with their motion to dismiss: the declaration of a claims specialist employed by the Defendants (the "**Morrison Declaration**") (ECF No. 12-1); a copy of the Plaintiff's auto insurance policy (the "**Policy**") (ECF No. 12-2); and a letter dated August 10, 2022, from the Defendants' counsel to the Plaintiff's counsel (the "**August 10, 2022 Letter**") (ECF No. 12-3).

"Ordinarily, [on a motion to dismiss,] a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). But the First Circuit recognizes "narrow exceptions" to this rule "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). In evaluating this motion, I consider the Morrison

¶¶ 23–24 (ECF No. 1-2). At the time of the collision, the Plaintiff had auto insurance from Progressive Casualty Insurance Company ("**Progressive**"). Compl. ¶ 27. The Plaintiff's insurance policy (the "**Policy**") was underwritten by United Financial Casualty Company. ("**UFCC**"). Compl. ¶ 2. The Policy provided that, in the event of a collision, the insurer would "pay for sudden, direct, and accidental loss" to the Plaintiff's vehicle. Ex. A. to Morrison Decl. – Dec. Page and Policy ("**Policy**") 14 (ECF No. 12-2). The maximum payment the insurer agreed to make was the lowest of one of four calculations:

> a. the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible;
> b. the amount necessary to replace the stolen or damaged property reduced by the applicable deductible;
> c. the amount necessary to repair the damaged property to its pre-loss condition reduced by the applicable deductible; or
> d. the Stated Amount shown on the declarations page for that covered auto.

Policy 18. The Policy specified that "[t]he actual cash value of a vehicle equals its replacement cost at the time the loss occurs, less the value of its physical depreciation as determined by standard business practices." Policy 19.

The Policy stated that the insurer could "use estimating, appraisal, or injury evaluation systems to assist [the insurer] in adjusting claims under this policy and to assist [the insurer] in determining the amount of damages, expenses, or loss payable

---

Declaration, the Policy, and the August 10, 2022 Letter because the Plaintiff does not dispute these documents' authenticity, they are central to the Plaintiff's claims, and, at least in the case of the Policy, the document is sufficiently referred to in the Complaint.

under this policy." Policy 24. The Policy also laid out a series of steps in the event of

a disagreement between the insurer and the insured as to the amount of loss:

> If we cannot agree with you on the amount of a loss, then we or you may
> demand an appraisal of the loss. Within 30 days of any demand for an
> appraisal, each party shall appoint a competent appraiser and shall
> notify the other party of that appraiser's identity. The appraisers will
> determine the amount of loss. If they fail to agree, the disagreement will
> be submitted to a qualified umpire chosen by the appraisers. If the two
> appraisers are unable to agree upon an umpire within 15 days, we or
> you may request that a judge of a court of record, in the county where
> you reside, select an umpire. The appraisers and umpire will determine
> the amount of loss. The amount of loss agreed to by both appraisers, or
> by one appraiser and the umpire, will be binding. You will pay your
> appraiser's fees and expenses. We will pay our appraiser's fees and
> expenses. All other expenses of the appraisal, including payment of the
> umpire if one is selected, will be shared equally between us and you.
> Neither we nor you waive any rights under this policy by agreeing to an
> appraisal.

Policy 21. The Policy further stated that, "[w]e may not be sued unless there is full

compliance with all the terms of this policy." Policy 27.

The Plaintiff made a claim for the damage to his vehicle stemming from the

collision on or around January 25, 2022. Compl. ¶ 29. Progressive accepted the claim

and declared the Plaintiff's vehicle to be a "total loss." Compl. ¶ 30. To calculate the

settlement amount, Progressive used a vehicle valuation report (the "**Valuation**

**Report**") prepared by a third-party vendor, Mitchell International, Inc. ("**Mitchell**").

Compl. ¶¶ 33–34; *see* Vehicle Valuation Report ("**Valuation Report**") (ECF No. 1-2).

A "Methodology Explanation" appended at the back of the Valuation Report

explained Mitchell's process for vehicle appraisal. Valuation Report 7. First, Mitchell

found comparable vehicles in the same market area.[2] Valuation Report 7. Second, Mitchell adjusted the prices of the comparable vehicles based on the following "comparable vehicle adjustments":

- Projected Sold Adjustment [("**PSA**")]—an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price).
- Vehicle Configuration Adjustment—an adjustment for differences in configuration between the comparable vehicle and the loss vehicle (e.g. differences in trim).
- Mileage Adjustment—an adjustment for differences in mileage between the comparable vehicle and the loss vehicle.
- Equipment—adjustments for differences in equipment between the comparable vehicle (e.g. equipment packages and options) and the loss vehicle.

Valuation Report 7. Third, Mitchell calculated a "base vehicle value" by averaging the adjusted cost of the comparable vehicles. Valuation Report 7. Fourth, Mitchell calculated the following "loss vehicle adjustments":

- Condition Adjustment: Adjustments to account for the condition of the loss vehicle prior to the loss.
- Prior Damage Adjustment: Adjustments to account for any prior damage present on the loss vehicle prior to the loss.
- After Market Part Adjustment: Adjustments to account for any after market parts present on the loss vehicle prior to the loss.
- Refurbishment Adjustment: Adjustments to account for any refurbishment performed on the loss vehicle prior to the loss.

Valuation Report 7. Finally, Mitchell calculated a "market value" by applying the loss vehicle adjustments to the base value. Valuation Report 7.

---

[2]     "At the time of the collision, the vehicle was in the process of being transferred from" the Plaintiff's father, in Louisiana, to the Plaintiff, in Maine. Compl. ¶¶ 25–26. The Valuation Report thus listed the vehicle's location as Louisiana. *See* Valuation Report 1 (listing the vehicle's zip code as 70809).

In its Valuation Report for the Plaintiff's Volvo, Mitchell identified three comparable vehicles for sale in the market area. Valuation Report 5–6. Mitchell then subtracted $398, $537, and $427, respectively, from each of those vehicles' list prices by applying a PSA. Valuation Report 5–6. Ultimately, the Defendants offered the Plaintiff $12,824.37 to settle his claim. Valuation Report 1.

A letter dated August 10, 2022, (the "**August 10, 2022 Letter**") from the Defendants' counsel to the Plaintiff's counsel indicates that the Plaintiff sent the Defendants a "demand letter and draft complaint regarding Matthew Thurston's automobile property damage claim" on July 12, 2022. Ex. 2 — 8-10-22 Letter ("**August 10, 2022 Letter**") 1 (ECF No. 12-3). Then, in the fall of 2022, the Plaintiff filed a class action[3] complaint (the "**Complaint**") against Progressive and UFCC (together, the "**Defendants**").[4] In his Complaint, the Plaintiff asserts that he purchased insurance from the Defendants based on their promise that they "would pay him the value of his car if it were damaged in an accident," but that "[w]hen it came time for [the Defendants] to honor the promises made in the [P]olicy [they] sold to [the] Plaintiff," the Defendants failed to "pay [the] Plaintiff [the] fair value for his car." Compl. ¶¶ 3–4, 6, 9. The Plaintiff specifically takes issue with the application of

---

[3]     The Plaintiff has not yet moved for class certification. While neither party raises the issue, I note that Rule 23(c) of the Federal Rules of Civil Procedure speaks of certifying the class "[a]t an early practicable time." Fed. R. Civ. P. 23(c)(1)(A). "The word 'practicable' imports some leeway in determining the timing of such a decision," *Danny B. ex rel Elliott v. Raimondo*, 784 F.3d 825, 837 (1st Cir. 2015), and a court may defer a decision on class certification until after deciding a Rule 12(b)(6) motion, *see In re Wayfair, Inc. Secs. Litig.*, 471 F. Supp. 3d 332, 337–38 (D. Mass. 2020). Following the parties' lead, I consider the motion to dismiss now, irrespective of class treatment.

[4]     The suit was originally filed in state court, but was removed to federal court at the behest of the Defendants. *See* Notice of Removal (ECF No. 1).

a PSA in Mitchell's appraisal process. *See* Compl. ¶ 40. The Valuation Report describes the PSA as "an adjustment to reflect consumer purchasing behavior," Valuation Report 7, but the Plaintiff asserts that, in practice, the PSA is, "invariably, a downward adjustment in the value of the comparable vehicles," Compl. ¶ 38. The Plaintiff argues that this downward departure "has no rational basis" in the current used vehicle market, "where used cars are only available at a significant premium." Compl. ¶ 42.

The Plaintiff contends that the Defendants' application of PSAs is "contrary to appraisal standards." Compl. ¶ 43. "Appraisers customarily use advertised prices to determine the value of comparable vehicles, and only make adjustments based on observed and verifiable data; reasonable appraisal standards do not permit arbitrary adjustments from the advertised price based upon undocumented and unverifiable assumptions that vehicles tend to sell below list price." Compl. ¶ 44. And, according to the Plaintiff, "Mitchell's primary competitor in providing automated valuation reports to insurance companies—CCC Intelligent Solutions—does not apply [PSAs] in this manner" and "[i]nstead . . . uses list prices." Compl. ¶ 45.

Overall, the Plaintiff states that, "[w]ere it not for [the] Defendant[s'] deceptive and improper adjustments, the Plaintiff, and other similarly situated consumers in Maine, would have received a greater amount for their total loss vehicles from" the Defendants. Compl. ¶ 47. The Plaintiff's Complaint contains three counts against the Defendants: unfair claim settlement practices (Count I); unfair trade practices (Count II); and conversion (Count III). Compl. ¶¶ 55–67.

6

Now, the Defendants move to dismiss the Complaint or, in the alternative, to compel an appraisal and stay the proceedings. Defs.' Mot. to Dismiss or, in the Alternative, to Compel Appraisal and Stay the Proceedings and Mem. in Supp. ("**Defs.' Mot.**") 1 (ECF No. 12). First, the Defendants argue that the Plaintiff's entire suit is barred by his failure to participate in the appraisal dispute process outlined in the Policy.  Defs.' Mot. 7. Second, the Defendants assert that Counts I, II, and III should each be dismissed because the Plaintiff has failed to state a claim for unfair claim settlement practices, unfair trade practices, or conversion. Defs.' Mot. 9–16. Third, the Defendants seek to dismiss the claims against Progressive on the ground that it is not the proper defendant in this action. Defs.' Mot. 16–17. Finally, the Defendants argue that, if I decline to dismiss the Plaintiff's Complaint, that I should compel appraisal and stay the proceedings. Defs.' Mot. 17.

## LEGAL STANDARD

"To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), 'a complaint must provide a short and plain statement of the claim showing that the pleader is entitled to relief,' with 'enough factual detail to make the asserted claim plausible on its face.' " *Legal Sea Foods, LLC v. Strathmore Ins. Co.*, 36 F.4th 29, 33 (1st Cir. 2022) (quoting *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015)). This is a "make-or-break standard." *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 29 (1st Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009)). "Plausible" means "more than merely possible." *Germanowski v. Harris*, 854 F.3d 68, 71 (1st Cir. 2017) (quoting *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012)). In evaluating a motion to dismiss, I take "as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021) (quoting *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011)). I do not credit "conclusory legal allegations" or "factual allegations that are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture." *Legal Sea Foods*, 36 F.4th at 33 (citations and internal quotation marks omitted).

## DISCUSSION

### I.  Compliance with Appraisal Dispute Process

At the outset, the Defendants argue that the Plaintiff's lawsuit is barred because, by refusing to participate in the appraisal process invoked by the Defendants after the Plaintiff disagreed with Mitchell's valuation, the Plaintiff failed to satisfy "a precondition to [the Plaintiff's] ability to pursue any lawsuit challenging [the Defendants'] valuation of his loss." Defs.' Mot. 8. Specifically, the Defendants assert that the Plaintiff's refusal to participate in the appraisal violated the provision in the Policy stating, "[i]f we cannot agree with you on the amount of a loss, then we or you may demand an appraisal of the loss." Policy 21. "This provision," the Defendants contend, "obligates either [the Defendants] or the insured to participate in appraisal upon the demand of the other." Defs.' Mot. 7.

The Plaintiff responds that the appraisal clause does not create such an obligation in this case because "this disagreement is not about the 'amount of a loss.' " Mem. in Opp'n to Defs.' Mot to Dismiss or, in the Alternative, to Compel Appraisal and Stay Proceedings ("**Pl.'s Opp'n**") 4 (ECF No. 18). Rather, the Plaintiff writes, the dispute is about the Defendants' application of the PSA, "a subjective and arbitrary adjustment[,] in its claim settlements." Pl.'s Opp'n 4. Requiring re-appraisal in this case, the Plaintiff contends, "would not change matters," since another appraisal would not resolve the Plaintiff's claim that the Defendants improperly applied the PSA in the first instance. Pl.'s Opp'n 4.

As the Plaintiff points out, at least two other courts have held that similar contractual language requiring re-appraisal does not preclude suits over automatic adjustments. *See* Pl.'s Opp'n 4–5. In *Stanikzy v. Progressive Insurance Co.*, No. 2:20-cv-118, 2020 WL 2800711 (W.D. Wash. May 29, 2020), for example, Progressive Direct Insurance Company invoked the same appraisal clause language—"If we cannot agree with you on the amount of a loss, then we or you may demand an appraisal of the loss"—in an attempt to block a suit alleging that the insurer impermissibly applied a PSA during its valuation of the plaintiff's vehicle. *Id.* at *2. The court rejected Progressive's argument, finding that the disagreement was not about "the '*amount* of loss,' but rather, whether Progressive may legally make the [PSAs] at all." *Id.* As here, there was no claim in *Stanikzy* "that an appraiser would—or even could—choose not to take a PSA deduction from the list prices of the comparable vehicles."

*Id.* "Unless it did so," the court explained, "the appraisal would not obviate [the plaintiff's] claim that *any* [PSA] is illegal." *Id.*

Recently, in *Johnson v. American Family Insurance Co.*, No. 22-cv-214-jdp, 2023 WL 2733674 (W.D. Wis. Mar. 31, 2023), another court rejected the insurer-defendants' "attempt to distinguish *Stanikzy*." *Id.* at *10. As in *Stanikzy*, the *Johnson* plaintiffs "allege[d] that defendants intentionally lowballed insureds by applying a baseless reduction to the value of the comparable vehicles used to calculate the [actual cash value]" and therefore "[o]rdering appraisal would not resolve the underlying dispute." *Id.* at *10.

Here, the Defendants argue that *Stanikzy* is distinguishable on the ground that the plaintiff's claims in that case "were predicated on a Washington statute specifying what adjustments an insurer can make when valuing a total loss," whereas "no such Maine statute . . . exists." Defs.' Reply in Supp. of Their Mot. to Dismiss or, in the Alternative, to Compel Appraisal and Stay the Proceedings ("**Defs.' Reply**") 2 (ECF No. 21). The Defendants also point out that "the defendant in *Stanikzy* invoked the appraisal clause *after* the suit commenced, not before, as [the Defendants] did here," and that, "unlike [the] Plaintiff's claim, which has not settled, the claim in *Stanikzy* settled before litigation." Defs.' Reply 2. While the Defendants offer these three "key factual distinctions," they fail to explain why these differences matter. *See* Defs.' Reply 2. While Maine may not have a statute precisely analogous to the Washington law raised in *Stanikzy*, the Plaintiff here does allege that the Defendants' application of the PSA violates two Maine statutes: the Unfair Claim Settlement

Practices Act ("**UCSPA**"), 24-A M.R.S. § 2436-A, and the Unfair Trade Practices Act ("**UTPA**"), 5 M.R.S. § 207. *See* Compl. ¶¶ 57, 60. And, regardless of any of the factual discrepancies raised by the Defendants, the same reasoning applies in this case—an appraisal would not resolve the underlying dispute about whether the PSA violates Maine law and/or constitutes conversion for the purported class.

In sum, the Plaintiff's suit is not precluded because the appraisal clause does not apply to the dispute over the Defendants' application of a PSA to the Plaintiff's claim or those of the purported class in general. The Defendants' motion to dismiss the Plaintiff's Complaint for failure to comply with the appraisal clause is therefore denied. For the same reason, I also deny the Defendants' request to stay proceedings and compel appraisal.

## II.   Sufficiency of Claims

Even if the Plaintiff's suit is not barred, the Defendants argue that his complaint "should still be dismissed for failure to state a claim." Defs.' Mot. 9. Below I analyze the sufficiency of each of the Plaintiff's claims:

### A.   Unfair Claims Settlement Practices (Count I)

Count I of the Plaintiff's Complaint asserts that, "by inserting [PSAs] into its Valuation Reports," the Defendants violated the UCSPA. Compl. ¶¶ 56–57. The UCSPA provides a cause of action for "[a] person injured by [certain enumerated] actions taken by that person's own insurer," including, as is relevant here, "[k]nowingly misrepresenting to an insured pertinent facts or policy provisions relating to coverage at issue," and "[w]ithout just cause, failing to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become

reasonably clear." 24-A M.R.S § 2436-A(1)(A), (E). The Defendants argue that the Plaintiff's UCSPA claim should be dismissed because he has not plausibly alleged that (1) the Defendants "knowingly misrepresented" facts relating to coverage, (2) the Defendants' settlement offer was "without just cause," or (3) he suffered any injury. Defs.' Mot. 9–12.

### 1.    Knowing Misrepresentation of Facts

The Plaintiff alleges that, by applying a PSA, the Defendants violated the UCSPA by knowingly misrepresenting pertinent information related to his coverage. *See* Compl. ¶ 56; 24-A M.R.S. § 2436-A(1)(A). "To establish a knowing misrepresentation, a plaintiff must provide evidence demonstrating something more than a mere dispute between the insurer and insured as to the meaning of certain policy language." *Curtis v. Allstate Ins. Co.*, 2002 ME 9, ¶ 24, 787 A.2d 760. Rather, "[k]nowing misrepresentation means to be aware that you are misrepresenting something. In other words, you know the policy says one thing and means one thing but you tell the insured something else." *Saucier v. Allstate Ins. Co.*, 1999 ME 197, ¶ 21, 742 A.2d 482.

The Defendants argue that the Plaintiff's claim fails because he has only alleged that the Defendants paid less than the fair market value of his vehicle, which "is not an allegation of a misrepresentation of . . . any fact about coverage under the Policy." Defs.' Mot. 9–10. And, the Defendants continue, "even if the Plaintiff had alleged some misrepresentation . . . [he] has not alleged that any misrepresentation was 'knowing,' " because it was Mitchell, not the Defendants, who applied the PSA. Defs.' Mot. 10. I do not agree.

As to the Defendants' first argument, the Plaintiff alleges that the Defendants knew that the Policy required the insurer to pay out the vehicle's "actual cash value"—defined as "its replacement cost at the time the loss occurs, less the value of its physical depreciation"—but that the Defendants then impermissibly factored in the PSA into their calculation of the actual cash value. *See* Policy 19; Compl. ¶ 56. The Plaintiff claims that the Defendants' "policy of inserting PSAs into their car appraisals creates a *misleading and false impression* that the value of a consumer's car is less than its true value." Pl.'s Opp'n 8; *cf. Saucier*, 1999 ME 197, ¶ 19, 742 A.2d 482 ("Taken in the light most favorable to [the plaintiff,] the facts . . . support the jury's determination that [the defendant-insurer], through its claim analyst, knowingly misrepresented its obligations pursuant to the terms of its policy. The jury could reasonably conclude that the claim analyst had been directed by [the defendant-insurer] to disregard its policy provisions and reduce claimant's damages by [an impermissible factor].").

The Defendants' second argument—that the Plaintiff has not alleged a "knowing" misrepresentation because Mitchell conducted the valuation rather than the Defendants—is also a non-starter. The Plaintiff specifically alleges that the Defendants "conspire[d]" and "coordinat[ed]" with Mitchell to arbitrarily reduce the appraised value of his total-loss vehicle. Compl. ¶¶ 7–8. Moreover, even absent such allegations, the Defendants provide no support for the illogical contention that an insurer can escape liability by having a third-party conduct its business. Insurers are "responsible for the actions of *all* [their] representatives," *Saucier*, 1999 ME 197, ¶ 20,

742 A.2d 482 (emphasis added), and the Defendants point to no caselaw holding that this responsibility excludes the actions of third-party vendors like Mitchell.

The Plaintiff has plausibly alleged that the Defendants knowingly misrepresented facts related to coverage.

### 2.    Settlement Offer Without Just Cause

The Defendants also contend that the Plaintiff fails to plausibly allege that the Defendants' settlement offer was without just cause. Defs' Mot. 10–11. To succeed under § 2436-A(1)(E) of the UCSPA, a plaintiff must show that the insurance company "without just cause, fail[ed] to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear." 24-A M.R.S. § 2436-A(1)(E). "[A]n insurer acts without just cause if it refuses to settle claims without a reasonable basis to contest liability, the amount of any damages or the extent of any injuries claimed." 24-A M.R.S. § 2436-A(2).

Here, the Defendants offer three arguments for why the Plaintiff's claim pursuant to § 2436-A(1)(E) should be dismissed, each of which is unavailing. First, the Defendants argue that the Plaintiff's claim fails because he did not allege "(1) the amount the [Defendants] offered for his total-loss vehicle or (2) the [actual cash value] of his vehicle." Defs.' Mot. 11. But the Valuation Report attached to the Plaintiff's Complaint states that the "Settlement Value" of the Plaintiff's vehicle (presumably the amount the Defendants offered to settle the Plaintiff's claim) is $12,824.37 and shows that a PSA was applied to reduce the list prices of each of the comparable vehicles in the market area by $398, $537, and $427, respectively. *See* Valuation Report 1, 5–6. With this information, I can infer both the amount the Defendants

offered for the Plaintiff's vehicle and the amount by which the settlement offer differed from the alleged actual cash value.

Second, the Defendants argue that the Plaintiff "fails to plausibly allege that any settlement offer was made 'without just cause' " because "there is no assertion . . . that [the] Plaintiff made a demand for some additional damages or injuries that UFCC refused to cover" and therefore "has not alleged that [the Defendants] 'contest[ed]' coverage or the amount of any damages claimed." Defs.' Mot. 11 (third alteration in original). It may be true that the Complaint itself does not allege that the Plaintiff demanded additional damages or injuries that the Defendants refused to cover. However, I can infer that the Plaintiff made such a demand from the August 10, 2022 Letter submitted by the Defendants, which states that the Plaintiff sent a "demand letter and draft complaint regarding [his] automobile property damage claim" on July 12, 2022. August 10, 2022 Letter 1.

Third, the Defendants assert that the "Plaintiff fails to allege [the Defendants] lacked . . . 'just cause' . . . for [their] settlement offer" because the Defendants "relied on sophisticated valuation software provided by . . . Mitchell . . . in estimating the value of Plaintiff's vehicle." Defs.' Mot. 12. This argument, too, falls short. The Plaintiff alleges that the application of the PSA is "arbitrary" and "has no rational basis." Compl. ¶¶ 39, 42. Thus, the Plaintiff has plausibly alleged that the Defendants' settlement offer was made "without a reasonable basis" and thus "without just cause." 24-A M.R.S. § 2436-A(2).

### 3.   Injury

The Defendants also seek to dismiss the Plaintiff's UCSPA claims on the ground that he has failed to allege any injury. Defs.' Mot. 12. But the Plaintiff has alleged an injury—that he and the members of the putative class "were damaged by [the Defendants'] failure to pay the true value of their cars by [their] use of the [PSAs]"—and the Defendants provide no support for their contention that this does not satisfy the definition of injury under the UCSPA. Compl. ¶ 46.

Overall, the Plaintiff's Complaint clears the relatively low hurdle required to state a plausible claim pursuant to § 2436-A(1)(E) of the UCSPA, and the Defendants' motion to dismiss that claim is denied.

### B.   Unfair Trade Practices (Count II)

In Count II of his Complaint, the Plaintiff alleges that the Defendants' actions constituted "unfair and deceptive trade practices prohibited by" the UTPA. Compl. ¶ 60. The UTPA proscribes "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." 5 M.R.S. § 207. "The words 'unfair' and 'deceptive' are not defined in the Maine UTPA" but "[t]he applicable definitions have been supplied by the Maine Law Court." *James v. GMAC Mortg. LLC*, 772 F. Supp. 2d 307, 322 (D. Me. 2011). "To justify a finding of unfairness, the act or practice: (1) must cause, or be likely to cause, substantial injury to consumers; (2) that is not reasonably avoidable by consumers; and (3) that is not outweighed by any countervailing benefits to consumers or competition." *State v. Weinschenk*, 2005 ME 28, ¶ 16, 868 A.2d 200. "An act or practice is deceptive if it is a material representation, omission, act or practice that is likely to mislead consumers acting

reasonably under the circumstances." *Id.* at ¶ 17. A representation, omission, act, or practice is material if it "involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Id.* (citation omitted). "An act or practice may be deceptive, within the meaning of Maine's UTPA, regardless of a defendant's good faith or lack of intent to deceive." *Id.* The UTPA confers a private right of action to persons who "suffer[ ] any loss of money or property, real or personal, as a result of" an unfair or deceptive practice. 5 M.R.S. § 213(1).

The Defendants argue that the Plaintiff's UTPA claim should be dismissed because he has failed to sufficiently allege that he suffered a "loss of money or property," that the Defendants committed an unfair or deceptive trade practice, and/or that any representation by the Defendants was material. Defs.' Mot. 13–14. I am not convinced.

First, the Plaintiff alleges that, in applying a PSA to the valuation of his vehicle, the Defendants misstated the value of his vehicle and caused him to suffer monetary damages. Thus, he has plausibly alleged a loss of money or property.

Second, the Plaintiff asserts that the Defendants committed an unfair or deceptive trade practice by "misstating the value of [customers' cars] so that consumers are paid less than they are entitled." Pl.'s Opp'n 11. The Defendants contend that the Plaintiff has not pointed to any representation by the Defendants related "to the manner in which [they] would value total loss claims." Defs.' Mot 14. But the Plaintiff alleges that he was entitled to the actual cash value of his vehicle

under the Policy, and the Policy defines a vehicle's actual cash value as "its replacement cost at the time the loss occurs, less the value of its physical depreciation as determined by standard business practices." Policy 19. Moreover, the Valuation Report describes the PSA as "[a]n adjustment to reflect consumer purchasing behavior." Valuation Report 7. Putting those pieces together, the Plaintiff's claim is that the PSA does not actually "reflect consumer purchasing behavior," that the PSA's application unfairly lowered the actual cash value of his vehicle, and thus that the Defendants misrepresented the nature of the insurance coverage they provide.

Third, the Defendants argue that the Plaintiff has failed to allege that these representations were "material" to his choice regarding their product. Defs.' Mot. 14. But even if the Plaintiff's Complaint does not explicitly state that, "but for such representations, he would have made a different choice, or acted differently, with respect to his choice of automobile insurance," Defs.' Mot. 14, it is reasonable to infer that customers choose insurance policies based on the extent and value of coverage.

Overall, the Plaintiff has plausibly stated a claim of unfair and deceptive acts under the UTPA, and the Defendants' motion to dismiss Count II of the Plaintiff's Complaint is therefore denied.

### C.    Conversion (Count III)

Count III of the Plaintiff's Complaint alleges that the Defendants converted the property of the Plaintiff and the putative class by "denying [them] the money they were entitled to when the[y] filed claims." Compl. ¶ 67. To establish a claim for conversion, a plaintiff must show that (1) he "has a property interest in the property"; (2) he "had a right to possession at the time of the alleged conversion"; and (3) he

"made a demand for its return that was denied by the holder." *Barron v. Shapiro & Morley, LLC*, 2017 ME 51, ¶ 14, 157 A.3d 769. The Defendants argue that the Plaintiff's conversion claim should be dismissed because "in Maine, there is no claim for the conversion of money where the alleged conversion is simply a claim for damages stemming from an alleged breach of contract." Defs.' Mot. 15.

The Maine Supreme Judicial Court has long held that due to "the distinctive quality of money as differing from other kinds of property, . . . [m]ere failure to deliver such property in specie on demand would not be technical conversion," but might be ground for a breach of contract action. *Hazelton v. Locke*, 104 Me. 164, 71 A. 661, 663 (1908). In 2003, this Court reiterated *Hazelton*'s holding, explaining that, although "[t]he Law Court apparently has not had the occasion to revisit this issue in the subsequent 95 years, . . .  the point remains the same"—when "[t]he plaintiff has a contract remedy for its claimed damage," a claim for conversion cannot stand. *Innovative Network Sols., Inc. v. Onestar Commc'ns, LLC*, 283 F. Supp. 2d 295, 301 (D. Me. 2003). In short, "Maine law does not recognize a duplicative tort remedy." *Id.*

The Plaintiff seeks to downplay the importance of *Hazelton* as "grounded in the archaic precursors to claims for breach of contract and conversion," and he suggests that the law has since evolved to recognize a claim for conversion of funds owed under an insurance policy. Pl.'s Opp'n 12–13. He relies on *Northeast Coating Tech., Inc. v. Vacuum Metallurgical Co.*, 684 A.2d 1322, 1324 (Me. 1996), for the proposition that "[c]onversion may extend to certain types of intangibles, for example a right to payment, or a right to withdraw funds, that are 'customarily merged in or

identified with some document,' . . . such as a promissory note or bank book." Pl.'s Opp'n 13. He further argues that the Restatement makes clear that conversions of documents can apply to insurance policies. Pl.'s Opp'n 13 (quoting Restatement (Second) of Torts § 242 cmt. b). The problem for the Plaintiff is that he does not explain how the intangible here—his right to payment under the Policy—is the type of intangible "customarily merged in or identified with some document," as, for instance, savings bank books. The Plaintiff offers no case law that has applied a conversion action to a claim for payment under an insurance policy, and while the law may be "undergoing a process of expansion," Restatement (Second) of Torts § 242 cmt. b, federal courts are not at liberty to blaze new trails in state law.

In all, I am not persuaded that the Plaintiff's claim is appropriately brought as one for conversion. The Defendants' motion to dismiss Count III of the Plaintiff's Complaint is therefore granted.

## III. Claims Against Progressive

Finally, the Defendants ask me to dismiss the claims against Progressive because "the sole allegation against Progressive . . . is that it owns the 'Progressive' trademark," and because, as the underwriter of the Policy, UFCC "was [the] plaintiff's insurer and the entity that engaged in the allegedly improper conduct." Defs.' Mot. 17. The Defendants, however, present no support for their argument that UFCC, as the underwriter of the Policy, is therefore the Plaintiff's insurer and the sole proper defendant. I have not been made privy to the corporate structure of the Defendant-companies, but the record before me shows that Progressive's name is on the Valuation Report and the Policy, which suggests that Progressive bears some

responsibility for those documents. Though discovery may eventually show that UFCC is the only proper defendant in this action, at this stage, I find that the Plaintiff may proceed on his suit against both Defendants.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the Defendants' motion to dismiss Count III of the Plaintiff's Complaint. The motion is **DENIED** as to all other claims.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 20th day of June, 2023.