UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| MATTHEW THURSTON, <br> KATHERINE BRIDGES And <br> GENEVIEVE MCDONALD, <br> individually and on behalf of others <br> similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> PROGRESSIVE CASUALTY <br> INSURANCE COMPANY, et al., <br><br> Defendants. | Docket No. 1:22-cv-00375-NT |

## SECOND AMENDED CLASS ACTION COMPLAINT

NOW COME the Plaintiffs, Matthew Thurston, Katherine Bridges and Genevieve McDonald by and through counsel, and makes the following Complaint individually, and on behalf of a class of persons defined below, against the Defendants.

## INTRODUCTION

1. The Plaintiffs, Matthew Thurston, Katherine Bridges and Genevieve McDonald all bought auto insurance policies from "Progressive."

2. The commonly known PROGRESSIVE trademark is registered to Progressive Casualty Insurance Company. However, the Plaintiffs' policies are underwritten by United Financial Casualty Co. The Defendants will be referred to throughout this Complaint as either "Defendant," "Defendants," or "Progressive."

3. As part of the sale, Progressive promised that it would pay the Plaintiffs the value of the

Plaintiffs' vehicles if they were damaged in an accident.

4. Based on the promises, Plaintiffs bought their respective policies and paid premiums for an auto insurance policy from Progressive.

5. On or around January 21, 2022, Plaintiff Matthew Thurston's car, that was covered by the policy was "totaled" in a motor vehicle collision.

6. On or around September 28, 2023 the Plaintiff Katherine Bridges' vehicle, which was covered by her policy was totaled in a single vehicle accident.

7. On or around February 28, 2019, the Plaintiff Genevieve McDonald's vehicle, which was covered by her policy was totaled in a single vehicle accident.

8. When it came time for Progressive to honor the promises made in the policies it sold to Thurston, Bridges and McDonald, Progressive did not live up to its promises.

9. Rather than pay Plaintiffs the value of their vehicles, Progressive instead chooses to conspire with another company and not pay Plaintiffs what they were owed.

10. Progressive hired another company, Mitchell, to provide an appraisal tool Progressive uses to perform the valuation reports Plaintiffs' total loss claims. Mitchell systematically, and without any reasonable justification, depresses the appraised value of all total loss vehicles in coordination with Progressive.

11. Rather than pay Plaintiffs fair value for their vehicles, Progressive relied on Mitchell's systemic depressed value.

12. Instead of Progressive paying fair value as promised to Plaintiffs and all other similarly situated Mainers, Defendant shorts them and they receive less than what they were promised.

## **PARITIES AND VENUE**

13. The Plaintiff, Matthew Thurston, is a resident of Hancock County, Maine, and has a Progressive Auto policy which he purchased in Maine.

14. The Plaintiff, Katherine Bridges, is a resident of Hancock County, Maine, and has a Progressive Auto policy which she purchased in Maine.

15. The Plaintiff, Genevieve McDonald, is a resident of Hancock County, Maine and has a Progressive Auto policy which she purchased in Maine.

16. This action is also asserted on behalf of a class consisting of the following: All persons who were insured by the Defendant in the State of Maine, for personal or family use of a vehicle, in the six years preceding the filing of the original Complaint in this matter, who were paid or offered compensation for a total loss on their vehicle and the offer was reduced based on a Valuation Report obtained by Defendant that included a projected sold adjustment ("the Class").

17. Defendant, Progressive Casualty Insurance Company, has its corporate headquarters located at 6300 Wilson Mills Rd, Mayfield Village, OH 44143.

18. Defendant United Financial Casualty Co. has its corporate headquarters located at 6300 Wilson Mills Rd, Mayfield Village, OH 44143.

19. Progressive Casualty Insurance Company and United Financial Casualty Co., are, for all practical purposes, part of the Progressive Group of Insurance Companies.

20. According to its website, Progressive conducts business in Maine and throughout the country under the brand Progressive or the Progressive Group of Insurance Companies.

21. Progressive's website attempts to convey a sense that Progressive can be trusted and that it works hard on behalf of its customers.  To enter the auto insurance section of Progressive's

website, one clicks on a link that says, "*buckle up with protection you can rely on.*"

22. Plaintiffs never got the protection promised.

23. Progressive also tells customers that, with Progressive, they get "*superior claims service*" and that Progressive will "*support you every step of the way,*" and tells potential customers to "*join us today and experience why we're one of the best insurance companies.*"

24. After making these promises, Progressive unfairly and systematically lowers the value of total loss claims it is supposed to pay in Maine.

25. Its annual report states that one of Progressive's four core values is integrity, stating *"[w]e revere honesty and adhere to high ethical standards to gain the trust and confidence of our customers. We value transparency, encourage disclosing bad news, and welcome disagreement.*"

26. Mr. Thurston's Ms. Bridges' and Mrs. McDonalds's experiences, as summarized in this Complaint, are but a few of many thousands of such instances where consumers in Maine are getting less than they are owed by Progressive for a total loss vehicle.

## MATTHEW THURSTON'S CLAIM

27. On January 21, 2022, the Matthew Thurston's vehicle was badly damaged in a collision.

28. The vehicle was a 2012 Volvo XC70 with VIN #YV4952BL2C1140915.

29. At the time of the collision, the vehicle was in the process of being transferred from Scott Thurston, the Plaintiff's father, to the Plaintiff.

30. Scott Thurston gave his son the vehicle on or around January 5, 2022, in Louisiana, and Matthew drove the car to Maine shortly thereafter.

31. At the time of the collision, Matthew Thurston had auto insurance from Progressive.

32. Progressive is obligated to pay for damage to the vehicle under the Mr. Thurston's collision policy because Mr. Thurston had an existing collision policy with Progressive for other

    vehicles, and, consistent with his contract with Progressive, had the option to elect to add any new vehicle within thirty (30) days of obtaining the new vehicle.

33. Mr. Thurston made a claim for the damage to the Volvo on or around January 25, 2022.

34. Progressive accepted the claim and declared Mr. Thurston's vehicle to be a "total loss" and offered to pay the Plaintiff what it claimed was the actual cash value of the vehicle.

35. Progressive's offer to pay the Mr. Thurston for the vehicle was less than the full value it had promised to pay.

36. Matthew Thurston's situation was not unique because Progressive's standard practice, as described below, systemically reduces its offer to pay to less than the value of total loss vehicles without any reasonable or rational basis.

### KATHERINE BRIDGES' CLAIM

37. On September 28 of 2023, Ms. Bridges' vehicle was badly damaged in a single vehicle collision.

38. The vehicle was a 2020 Kia Telluride with VIN # 5XYP3DHC4LG067730.

39. At the time of the collision, Ms. Bridges had auto insurance from Progressive.

40. Progressive is obligated to pay for damage to the vehicle under the under Ms. Bridges' policy.

41. Ms. Bridges made a claim for the damage to her vehicle on or around September 29, 2023.

42. Progressive accepted the claim and declared Ms. Bridges' vehicle to be a "total loss" and offered to pay the her what it claimed was the actual cash value of the vehicle as outlined in the valuation report attached as Exhibit B.

43. Ms. Bridges accepted Progressives offer and used the money Progressive paid her to purchase a used vehicle.

44. Progressive's offer to pay Ms. Bridges for her vehicle was less than the full value it had

promised to pay because Progressive's standard practice, as described below, systemically reduces its offer to pay to less than the value of total loss vehicles without any reasonable or rational basis.

## GENEVIEVE MCDONALD'S CLAIM

45. On February 28, 2019, Ms. McDonald's vehicle, a 2009 Volkswagen Passat with VIN # WVWJK73C19P047779 was badly damaged in an accident.

46. Progressive was obligated to pay for damage to the vehicle under Ms. McDonald's Policy.

47. Progressive accepted the claim and declared Mrs. McDonald vehicle to be a "total loss" and offered to pay the her what it claimed was the actual cash value of the vehicle as outlined in the valuation report attached as Exhibit C.

48. Mrs. McDonald accepted Progressives payment.

49. Progressive's payment to Mrs. McDonald for the vehicle was less than the full value it had promised to pay because Progressive's standard practice, as described below, systemically reduces its offer to pay to less than the value of total loss vehicles without any reasonable or rational basis.

## PROGRESSIVES STANDARD PRACTICE OF USING A PROJECTED SOLD ADJUSTMENT

50. Progressive's standard practice involves obtaining a "Vehicle Valuation Report" ("Valuation Report") to offer Maine consumers less than the value of their total loss vehicle.

51. Progressive provided a Valuation Report for Matthew Thurston on or around February 17, 2022.

See Exhibit A.

52. Progressive provided a Valuation Report for Katherine Bridges on or around October 5, 2023.

    *See* Exhibit B.

53. Progressive Provided a Valuation Report to Genevieve McDonald on or around March 6, 2019. See Exhibit C.

54. On information and belief, the Valuation Reports related to total-loss vehicles used by Progressive during the relevant period in Maine followed the same standard practice that provided Plaintiffs and others an offer to pay that relied on the use of "Valuation Reports" similar to Exhibits A, B, and C.

55. These Valuation Reports start with a list of comparable used vehicles, normally of the same year, and make and model as the vehicle being appraised. The reports base the value of the vehicle to be appraised upon the advertised prices for comparable vehicles. The report uses those advertised prices to create a model of the value of the total loss vehicle.

56. The report then deviates from the advertised prices of comparable vehicles by claiming to adjust those advertised prices to account for differences in equipment, mileage, and vehicle configuration to create a base value for the vehicle being appraised.

57. The Valuation Reports also include a "Projected Sold Adjustment" for each of the comparable vehicles used in the Valuation Report. These Projected Sold Adjustments are, invariably, a downward adjustment in the value of the comparable vehicles.

58. In the report used to determine the value of Mr. Thurston's vehicle, Mitchell applied Projected Sold Adjustments of -$398.00, -$537.00, and -$427.00 to the three vehicles used as comparable vehicles in the Valuation Report. See Exhibit A, pp 5-6.

59. In the report used to determine the value of Ms. Bridges' vehicle, Mitchell applied Projected sold adjustments of -$830.00, -$741.00, -$720.00, -$787.00 and $-721.00 to

the five vehicles used as comparable vehicles in the Valuation Report. See Exhibit B, pp 6-10.

60. In the report used to determine the value of Mrs. McDonald's vehicle, the Valuation Report applied Projected sold adjustments of -$485.00, -$445.00, -$485.00, -$566 and -$566.00 to the five vehicles used as comparable vehicles in the Valuation Report. See Exhibit C, pp 5-7.

61. The Projected Sold Adjustments are simply used to reduce the amount Progressive pays to consumers.

62. Progressive's Projected Sold Adjustments are used for arbitrary downward adjustments to its offers to pay the values of the comparable vehicles. The result of the adjustment is that the alleged value of each comparable vehicle used to determine the value of the vehicle being appraised, are lower. This, in turn, is used to lower the purported value of the vehicle being appraised. This leads to consumers being offered, and receiving, less for their vehicle than they are entitled to.

63. Progressive begins the process of making offers for loss vehicles using the comparative appraisal methodology outlined above, and then seeks further reductions in the value of total loss vehicles, by adding the bogus "Projected Sold Adjustment" into the comparable vehicles in every Valuation Report.

64. A reduction in the market value of a vehicle's list price based on supposed downward price pressure, especially in the current market, where used cars are only available at a significant premium has no rational basis.

65. Progressive's Projected Sold Adjustments are also contrary to appraisal standards. There are several generally recognized and acceptable methodologies for determining actual cash value, including use of comparable vehicles.

66. Appraisers customarily use advertised prices to determine the value of comparable vehicles, and only make adjustments based on observed and verifiable data; reasonable appraisal standards do not permit arbitrary adjustments from the advertised price based upon undocumented and unverifiable assumptions that vehicles tend to sell below list price.

67. The impropriety and arbitrariness of Progressive's Projected Sold Adjustments are further demonstrated by the fact that Mitchell's primary competitor in providing automated valuation reports to insurance companies—CCC Intelligent Solutions—does not apply projected sold adjustments in this manner. Instead, CCC Intelligent Solutions uses list prices.

68. Plaintiffs and each member of the class ("the Class") were damaged by Progressive's failure to pay the true value of their cars by its use of the adjustments discussed above that were not proper methodologies or appraisal standards.

69. Were it not for Defendant's deceptive and improper adjustments, the Plaintiffs, and other similarly situated consumers in Maine, would have received a greater amount for their total loss vehicles from Progressive.

## CLASS ALLEGATIONS

70. The Plaintiffs hereby repeat and reallege the claims in each of the proceeding paragraphs.

71. The Defendant treated the Plaintiffs the same way it treats all consumers in Maine whose vehicles it determines to be a total loss.

72. On information and belief, the Defendant, or its agent Mitchell, maintains records containing the Valuation Reports and the financial transactions connected to each total loss vehicle for which Progressive was obliged to pay a claim, in Maine, during the applicable period, and such records would be admissible as evidence in any trial or proceeding as statements of a party opponent.

73. These records would show the amounts of the "Projected Sold Adjustments" that Progressive made to the values of the cars of Plaintiffs and the other class members.

74. The records would identify all potential class members by name.

75. On information and belief, the joinder of all persons who meet the class definition in a single proceeding would be impracticable.

76. The claims asserted on behalf of the Plaintiffs and the Class present the following issue of fact and law that can and should be combined into a single action:

    a. Whether the Defendant, by applying a Projected Sold Adjustment for all total loss vehicles, in Maine, during the relevant time period, has violated 24-A M.R.S. § 2436-A(1)(A) by "knowingly misrepresenting to an insured pertinent facts................related to the coverage at issue;"

    b. Whether the Defendant, by applying a Projected Sold Adjustment to all total loss vehicles, in Maine, during the relevant time period, has violated 24-A M.R.S. § 2436-A(1)(E) by "failing to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear;"

    c. Whether the Defendant, by applying a Projected Sold Adjustment to all total loss vehicles, in Maine, during the relevant time period, engaged in unfair or deceptive trade practices, in violation of 5 M.R.S. § 207;

    d. If the Defendant is liable, what is the amount of damages due from them to the Class;

    e. If the Defendant is liable under the Unfair Trade Practices Act, what injunctive or equitable relief to impose upon the Defendant under 5 M.R.S. § 213(1);

    f. If the Defendant is liable for conversion, what injunctive relief to impose;

    g. If the Defendant is liable for conversion, whether the Defendant acted with Malice

      toward the Plaintiffs and the Class;

    h. If the Defendant is liable for conversion, and acted with malice toward the Plaintiffs and the Class, the amount of punitive damages to impose.

WHEREFORE, the Plaintiffs asks this Honorable Court to:

    a. Certify a class of persons, appoint the Plaintiffs as class representatives and their counsel as Class counsel as to all of the following Counts.

### COUNT I - 24-A M.R.S. § 2436-A – Unfair Claim Settlement Practices

77. The Plaintiffs hereby repeat and reallege the claims in each of the proceeding paragraphs.

78. By offering the Plaintiffs, and the Class, less than the full market value of his vehicle, by inserting Projected Sold Adjustments into its Valuation Reports, the Defendant has violated 24-A M.R.S. § 2436-A(1)(A) by "knowingly misrepresenting to an insured pertinent information related to the coverage at issue."

79. By offering the Plaintiffs and the Class less than the full market value of his vehicle, by inserting Projected Sold Adjustments into its Valuation Reports, the Defendant has violated 24-A M.R.S. § 2436-A(1)(E) by "[w]ithout just cause, failing to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear."

WHEREFORE, the Plaintiffs asks this Honorable Court to:

    a. Find that the Defendant has violated 24-A § 2436-A;

    b. Determine the amount of damages to the Plaintiffs and the Class;

    c. Impose interest at the rated of 18% per year from the time the claim should have been paid on any damages;

    d.   Enter judgment against the Defendants; and

    e.   Award the Plaintiffs and the Class their reasonable attorneys' fees and costs.

### COUNT II – 5 M.R.S. § 205-A – Maine Unfair Trade Practices Act

80. The Plaintiffs hereby repeats and realleges the claims in each of the proceeding paragraphs.

81. The Plaintiffs and the Class purchased the auto insurance policy at question primarily for personal or family use.

82. The Defendant's actions to the Plaintiffs and the Class, as alleged in this Complaint, are unfair and deceptive trade practices prohibited by 5 M.R.S. § 207.

83. The Defendant's action toward the Plaintiffs and the Class, as alleged in this Complaint, are not authorized, permitted or required by a state or federal agency or by applicable law, rule or regulation or other regulatory approval.

84. The Plaintiffs and the Class have suffered a loss of money and/or personal property because of the Defendant's unfair and/or deceptive acts.

WHEREFORE, the Plaintiffs asks this Honorable Court to:

    a.   Find that the Defendants have violated 5 M.R.S. § 207;

    b.   Determine the amount of damages to the Plaintiffs and the Class;

    c.   Award the Plaintiffs and the Class their reasonable attorneys' fees and costs;

    d.   Enjoin the Defendant from engaging in such unfair and deceptive trade practices in the future anywhere in the State of Maine;

    e.   Enter judgment against the Defendants; and

    f.   Impose whatever other remedies the Court deems just and equitable.

                                        Respectfully Submitted,

Dated: June 28, 2024                  /s/    John Z. Steed
                                        John Z. Steed, Esq. #5399
                                        Island Justice
                                        P.O. Box 771
                                        Stonington, ME 04681
                                        (207) 200-7077
                                        john@islandjusticelaw.com

                                        Scott C. Borison (MD Bar No. 22596)*
                                        Borison Firm LLC.
                                        1400 S. Charles St.
                                        Baltimore MD 21230
                                        Telephone: (301) 620-1016
                                        scott@borisonfirm.com

                                        Ronald I. Frederick (OH Bar No. 0063609)*
                                        Frederick & Berler LLC
                                        767 E. 185th Street
                                        Cleveland, Ohio 44119
                                        (216) 502-1055 (phone)
                                        (216) 609-0750 (fax)
                                        ronf@clevelandconsumerlaw.com

                                        *Counsel for Plaintiff Matthew Thurston*

                                        * Admitted *pro hac vice*