Exhibit S

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MAINE

---------------------------------------------------------------------------

MATTHEW THURSTON, KATHERINE BRIDGES, and
GENEVIEVE MCDONALD, individually and on
behalf of others similarly situated,

        *Plaintiffs,*

v.

UNITED FINANCIAL CASUALTY COMPANY and
PROGRESSIVE CASUALTY INSURANCE COMPANY,

        *Defendants.*

Docket No. 1:22-cv-00375-NT

_____

SUPPLEMENTAL DECLARATION OF JONATHAN WALKER, Ph.D.

CONFIDENTIAL

I, Jonathan Walker, declare as follows:

## I. *Introduction*

1.      I submitted a declaration in this matter dated April 15, 2024 regarding economic issues related to class certification, liability and damages.[1] In that declaration, I opined that proof of injury and quantification of damages in this case are individualized, and I explained the economic basis for that opinion. Since then, Katherine Bridges and Genevieve McDonald have joined Matthew Thurston as Plaintiffs; this new Plaintiff group has filed a Second Amended Complaint, and Jason Merritt has submitted two reports on Plaintiffs' behalf. United Financial Casualty Company ("UFCC" or "Defendant") asked me to supplement my declaration to address these developments including whether Plaintiffs have proven injury or damages to Ms. Bridges or Ms. McDonald and whether Mr. Merritt's reports identify a common method of proving class injury and damages. As I explain below, there is no reliable expert evidence of injury or damages to the Plaintiffs, and I am unaware of any other reliable evidence of harm to the Plaintiffs in the record. I also explain below that Mr. Merritt does not identify a reliable method to prove class injury or quantify class damages. None of the new material changes any of my original opinions. To the contrary, I have found additional evidence since my original declaration further indicating the need for individualized analysis to prove injury or damages.

2.      I have attached my current curriculum vitae as Exhibit A to this report. Therein, I detail my background and qualifications and identify all of my publications and all of the cases in which I have given testimony. In addition to the academic training listed there, I have also completed the Bureau of Certified Auto Appraisers automobile appraiser certification course.

3.      Exhibit B to this report lists  the additional materials that I have considered in preparing this supplemental declaration.

4.      Secretariat Economists is being compensated at my standard hourly rate of $1,000 for my work in this case.

## II. *New Named Plaintiffs' Total Loss Events*

<u>Katherine Bridges</u>

5.      Plaintiff Katherine Bridges owned and insured a 2020 Kia Telluride EX 4 Door Utility

---

[1] Declaration of Jonathan Walker, Ph.D., April 15, 2024 ("Declaration").

CONFIDENTIAL

Vehicle that was deemed a total loss after it ran off the road and hit a pole, causing a vehicle fire, on September 28, 2023.[2] Mitchell prepared a VVR for Ms. Bridges' loss vehicle.[3] The VVR yielded a Base Value of $33,731.80 and a Market Value of the same amount (i.e., there were no adjustments to Base Value). The Mitchell VVR included six comparable vehicles. The adjusted vehicle values for these six comparable vehicles ranged from $32,661.36 to $34,749.69 with PSAs. The range of adjusted values across the comparable vehicles is an indicator of the measurement error that may occur in valuing Ms. Bridges' loss vehicle. After controlling for differences in mileage, configuration and options, different dealers' asking prices were approximately $2,100 apart for cars of the same make and model as Ms. Bridges' loss vehicle. This variation across dealers can only be explained by measurement error among dealers in estimating market value or differences across vehicles in characteristics that Mitchell does not control for. In contrast to this $2,100 variation in adjusted prices, the PSAs in Ms. Bridges' VVR ranged from $720.00 to $830.00.[4] Measurement error and vehicle characteristics that are not accounted for in Mitchell's valuations could more than offset the impact of PSAs on its estimate of Ms. Bridges' vehicle's value.

6.       Because of the vehicle fire, Ms. Bridges' loss vehicle's odometer was unreadable. Mitchell based its valuation on estimated mileage of 83,411 at the time of loss.[5] However, at a dealer service inspection two weeks prior to Ms. Bridges' total loss event, her vehicle's odometer reading was 83,432.[6] Since lower mileage is associated with higher vehicle values, Mitchell's reliance on an estimate that was less than the actual mileage of Ms. Bridges' vehicle on the total loss date biases its valuation in Ms. Bridges' favor.[7]

7.       Mitchell identified Ms. Bridges' loss vehicle as having a Tow Hitch with Harness both as part of a Towing Package and separately as Optional Equipment.[8] Each comparable vehicle on

---

[2] Vehicle Valuation Report for Claim 23-2733986-01 (PGR_THURSTON_0007606); Bridges Claim Notes (PGR_THURSTON_0007577).
[3] Vehicle Valuation Report for Claim 23-2733986-01 (PGR_THURSTON_0007606).
[4] Ibid.
[5] Vehicle Valuation Report for Claim 23-2733986-01 (PGR_THURSTON_0007606).
[6] Deposition of Katherine Bridges, September 19, 2024 ("Bridges Deposition"), p. 59-60 and Bridges Deposition Exhibit 3 (PGR_THURSTON_0007620).
[7] Plaintiffs' expert Jason Merritt admitted that using incorrect mileage impacts the value of a vehicle appraisal, lowering the value "if you had higher mileage than what you originally had." (Deposition of Jason Merritt, October 22, 2024, pp. 149-150.)
[8] PGR_THURSTON_0007606 at PGR_THURSTON_0007609.

CONFIDENTIAL

Ms. Bridges' VVR included either a Towing Package or an equipment adjustment for the Towing Package as well as a separate equipment adjustment for a Tow Hitch with Harness.[9] However, Ms. Bridges testified that her vehicle had only one tow hitch.[10] Including two upward adjustments for one tow hitch (for comparable vehicles with no Towing Package) or an upward equipment adjustment for an additional tow hitch (for comparable vehicles with the Towing Package) is a bias in Ms. Bridges' favor. Removing the individual Tow Hitch with Harness equipment adjustments on the six comparable vehicles would result in a Base Value $417.07 lower.[11]

8.    Ms. Bridges' settlement amount was $35,337.05. UFCC paid $12,838.04 to the vehicle's lien holder, Kia Finance America, with the remaining $22,499.01 going to Ms. Bridges.[12]  The settlement amount equaled the Market Value of $33,731.80 plus fees and taxes of $1,855.25 less Ms. Bridges' deductible of $250.00.[13]

9.    The NADA Clean Retail Value for vehicles similar to Ms. Bridges' vehicle was $33,625. That is less than Mitchell's Base Value and Market Value of $33,731.80 notwithstanding that Ms. Bridges' vehicle was not in clean retail condition.[14] The Kelley Blue Book Typical Listing Price for vehicles similar to Ms. Bridges' vehicle was $27,475, also less than Mitchell's Market Value of $33,731.80.[15] The fact that Ms. Bridges' vehicle's Market Value was more than both of these guideline prices highlights the need for individualized consideration of her vehicle and circumstances to determine whether she was economically injured by UFCC's reliance on PSAs.

Genevieve McDonald

10.    Plaintiff Genevieve McDonald drove a 2009 Volkswagen Passat Komfort 4 Door Sedan that was deemed a total loss after it hit another car when exiting a parking lot on February 28,

---

[9] PGR_THURSTON_0007606 at PGR_THURSTON_0007611-616.
[10] Bridges Deposition, pp. 65-67.
[11] The Tow Hitch with Harness equipment adjustments on the six comparable vehicles were $438.29, $402.92, $391.06, $427.81, $392.03 and $450.30 respectively. (PGR_THURSTON_0007606 at PGR_THURSTON_0007611-616.)
[12] PGR_THURSTON_0007605; PGR_THURSTON_0007655; PGR_THURSTON_0007656; PGR_THURSTON_0007577 at 7583. *See also* Bridges Deposition, pp. 54-55.
[13] PGR_THURSTON_0007605.
[14] 2020 Kia Telluride – NADA.pdf. As I discussed in my original Declaration in this matter, dealers recondition the vehicles they sell. On average, they are in better than average condition for similar vehicles in use on the road.
[15] 2020 Kia Telluride – KBB.pdf. Formerly known as Suggested Retail Price, the Kelley Blue Book Typical Listing Price is representative of dealers' asking prices. It assumes that the vehicle has been fully reconditioned and has a clean title history (https://www.kbb.com/faq/used-cars/#question-2).

CONFIDENTIAL

2019.[16] Ms. McDonald's vehicle had 113,343 miles at the time of loss.[17]

11.     Mitchell prepared a VVR for Ms. McDonald's loss vehicle.[18] The VVR yielded a Base Value of $5,408.75 and a Market Value of $4,298.37 (a loss vehicle condition adjustment of negative $1,110.38 was made to Base Value). The Mitchell VVR included five comparable vehicles. The adjusted vehicle values for these five comparable vehicles ranged from $5,269.23 to $5,544.09 with PSAs that ranged from $445.00 to $566.00.[19]

12.     Ms. McDonald's settlement amount was $4,034.78. UFCC paid this entire amount to the vehicle's lienholder, Chrysler Capital,[20] because Ms. McDonald had a remaining payoff to Chrysler Capital of $8,220.31.[21] The $4,034.78 settlement payment equaled the Market Value of $4,298.37 plus fees and taxes of $236.41 less Ms. McDonald's deductible of $500.00.[22]

13.     Apparently, Mitchell's valuation exceeded Ms. McDonald's estimate of her loss vehicle's value. When the UFCC agent contacted her with the settlement offer and explained how the WCTL evaluation worked, the Claim Notes state that Ms. McDonald "accepts value [and] said its honestly more than she thought it would be worth."[23] The Claim Notes further state that "[s]he's glad to be out from under this 8K loan on a car worth half of that, she was ready for a new car anyway so will end up working out."[24]

14.     Mitchell's Base Value of $5,408.75 for Ms. McDonald's vehicle was more than the NADA Clean Retail Value of $5,075 for similar vehicles, and only $100.25 less than the KBB Typical Listing Price of $5,509 for similar vehicles.[25]  Given that Plaintiffs do not challenge the condition adjustments that Mitchell made to Base Value to arrive at Market Value,[26] a Base Value

---

[16] Vehicle Valuation Report for Claim 19-2813486-01 (PGR_THURSTON_0008147); McDonald Claim Notes (PGR_THURSTON_0008068).
[17] Vehicle Valuation Report for Claim 19-2813486-01 (PGR_THURSTON_0008147).
[18] Ibid.
[19] Ibid.
[20] PGR_THURSTON_0008146; PGR_THURSTON_0008233.
[21] PGR_THURSTON_0008068 at 8080-81; 8085.
[22] PGR_THURSTON_0008146.
[23] PGR_THURSTON_0008068 at 8080. *See also* McDonald Deposition, p. 116.
[24] Ibid.
[25] 2009 Volkswagen Passat – NADA.pdf.  and  2009 Volkswagen Passat – KBB.pdf.
[26] Mitchell's loss vehicle condition adjustments can be substantial. Among the three named plaintiffs in this case, the condition adjustments ranged from $0 (Ms. Bridges) to $1,110.38 (Ms. McDonald) in absolute value and 0% (Ms. Bridges) to 20.5% (Ms. McDonald) in absolute value as a percentage of Base Value.  Among the 25 sampled claims which I discuss later in this Declaration, the largest condition adjustment in absolute value was $1,826.01 (claim 16-5260239). The largest condition adjustment in absolute value as a percentage of Base Value was 54% (claim 16-1255139. See workpaper, "Condition Adjustment Analysis.xlsx."

CONFIDENTIAL

(and implicitly a Market Value) near the top of the range derived from these two guidebooks appears reasonable on its face. It would require a detailed appraisal of Ms. McDonald's loss vehicle to show that she was somehow economically injured by UFCC's reliance on PSAs despite the fact that Mitchell's valuation, inclusive of PSAs, is similar to or higher than guidebook values.

### III.    *No Reliable Economic Evidence of Injury to Any Plaintiffs*

15.    As was true in the case of Mr. Thurston, none of the evidence I have reviewed shows that either Ms. Bridges' or Ms. McDonald's loss vehicle was any more valuable than Mitchell concluded, or that the application of PSAs reduced the valuations of their loss vehicles below ACV. As I stated in my initial Declaration, I am not aware of any evidence in the record showing that PSAs are "pulled out of thin air" or not generated based on the statistical methodology laid out in Mitchell's business records.[27] I am also not aware of any evidence in the record showing that PSAs systematically result in undervaluation, or that the PSAs applied in Ms. Bridges' or Ms. McDonald's VVRs were inaccurate or caused undervaluation of their vehicles. In fact, Ms. McDonald told UFCC that she thought her car was worth less than Mitchell estimated and as described above, Ms. Bridges' valuation had embedded biases due to underestimated mileage and a double-counted tow hitch that increased the valuation amount. To show that WCTL undervalued any of the Plaintiffs' loss vehicles, it would be necessary to appraise the vehicle by some method that was proven or otherwise known to be more accurate than WCTL for that particular vehicle. There are no such valuations in the materials that I have reviewed.

### IV.    *Mr. Merritt's Opinion*

16.    Plaintiffs retained Mr. Merritt to explain what an appraisal is, explain the comparable vehicle appraisal methodology and opine about whether Mitchell's application of PSAs is appropriate. According to Mr. Merritt, Mitchell deviated from appraisers' comparable vehicle methodology by applying PSAs. Mr. Merritt says PSAs are unacceptable for two reasons. First, list price is the only pricing information available about the specific comparable vehicles that relates to a pure cash sale without any bundled products or services such as financing, a trade-in or warranty. According to Mr. Merritt, a dealer may sell a vehicle for less than its list price and still earn similar profit by providing or facilitating financing, paying less than fair value for a trade-in or selling a

---

[27] Matthew Thurston Deposition, pp. 74-75, 79-80.

CONFIDENTIAL

warranty or other product. Second, Mr. Merritt says that there are no hard data to support any price other than the dealer's list price, and that online listings – which Mitchell largely relies on to identify comparable vehicles – often reflect no-haggle prices.

17.       Taken at face value, neither of Mr. Merritt's reasons for opining that PSAs are improper demonstrates that sales prices and list prices are the same on average or that Mitchell overstates the difference between sales prices and list prices on average—or ever. To the contrary, Mr. Merritt admits that dealers will sometimes accept less than list price for certain vehicles, without necessarily conditioning the lower price on there being a trade-in, financing, or any other contingency. According to Mr. Merritt, sometimes dealers will reveal to appraisers what the "take price" for a listed vehicle is, the lowest price the dealer will "take," and some appraisers rely on the take price rather than the list price for valuation purposes.[28]  Mr. Merritt also admits that he will use sold prices to value comparable vehicles when he has convinced himself that it is not the result of a special discount and does not reflect the sale of ancillary items related to the purchase. This is consistent with sold prices being the relevant metric for market value, and list price merely being a proxy when sold price is potentially "tainted" in his mind.[29] Regardless of whether PSAs are "inappropriate" under a particular appraisal methodology,[30] the fact that some dealers sometimes take less than list price means that list prices overstate sold prices on average. A correction that accounts for differences between list prices and sold prices may improve the accuracy of an estimation methodology regardless of whether it is "appropriate" according to Mr. Merritt's appraisal standards. From an economic perspective, "inappropriateness," as Mr. Merritt uses the term, is irrelevant to injury and damages. Nevertheless, I consider the bases for Mr. Merritt's opinion below.

18.       The theory that dealers may sometimes accept less than list price based on an expectation that the customer will also rely on dealer financing does not contradict that selling prices are often less than list prices. In this situation, a cash purchaser may ultimately accept the price discount but reject the financing. Alternatively, a cash purchaser may accept the financing and immediately repay the vehicle loan in order to get the benefit of the lower price. A credit purchaser needs

---

[28] Merritt Supplemental Report, p. 6.
[29] Deposition of Jason Merritt, October 22, 2024 ("Merritt Deposition"), pp. 52, 62-63, 154.
[30] Other than saying so, Mr. Merritt provides no evidence that applying PSAs violates any written appraisal standards. To my knowledge, it does not violate any standards of the Bureau of Certified Auto Appraisers.

CONFIDENTIAL

financing anyway, but also gets the benefit of the lower price. In all cases, the sale price is still lower than the list price and the buyer is not harmed by having gotten financing.

19.     Similarly, the fact that a dealer may be more willing to discount if there is a warranty or trade-in involved does not change the fact that the dealer's list price for the vehicle exceeds the sales price. The bundling of a warranty or trade-in into the transaction would only be relevant if the warranty was overpriced or the trade-in price was below fair market value. But there is no reason to assume that either is the case on average or in any specific instance. The internet has made information about warranty pricing and trade-in values accessible. There is no basis to assume that vehicle buyers typically get less than fair market value for their trade-ins or that they pay more than fair market value for used-vehicle warranties. Bundling ancillary services into a vehicle transaction does not negate the benefit to the buyer of paying less than list price for the vehicle.[31]

20.     Mr. Merritt errs by focusing on dealer profit rather than buyer benefit. The issue at hand is not whether dealers can profit by selling ancillary services. They can. That is one of the reasons that list prices will overstate sold prices. Dealers are financially motivated to accept less than list prices as a strategy to earn revenue from lenders related to the provision of financing. This offsetting profit to the dealer is at the lender's expense, not the vehicle buyer's. The fact that a dealer may earn the same or higher profit when it provides financing despite a buyer paying less than list price does not change the fact that the buyer pays less than list price. Moreover, the potential profit to be earned providing financing or selling ancillary products or services does not only impact sold prices, it impacts list prices too. As a matter of economics, profit maximizing dealers will consider all of the potential profit from a transaction when setting prices.  These ancillary products' effects say nothing about whether any particular Mitchell valuation was inaccurate or whether Mitchell valuations are systematically biased in any way.

21.     The second basis for Mr. Merritt's opinion that PSAs are inappropriate is that there are no "hard data" regarding the difference between list price and ultimate sales price for a vehicle that

---

[31] There is a vast economic literature related to the impact of tying (conditioning a sale of one good on the purchase of another) and bundling (offering discounts that are conditional on purchasing ancillary products or services) on consumer welfare. There is an even larger literature related to the pricing of complementary goods and services, i.e., goods and services that consumers typically purchase together. Nevertheless, to my knowledge, there is no coherent economic theory that purchasing products or services together renders the sold prices for individual products invalid as a measure of stand-alone value while leaving the list price for those products valid and meaningful.

CONFIDENTIAL

has not sold yet.[32] By "hard data," Mr. Merritt apparently means data specific to the comparable vehicle. This is true, but the same lack of "hard data" applies to the adjustments made to account for the impact of mileage, condition and options on a comparable vehicle's value. In his reports in this case, Mr. Merritt argues that Mitchell's estimates related to those characteristics should be accepted without question and that it is standard for appraisers to rely on such "soft data."[33] It is impossible to know beforehand how these features of a vehicle that is for sale will ultimately impact the selling price of that vehicle. The impact is estimated in some way. Nevertheless, according to Mr. Merritt, it is standard practice for appraisers to adjust comparable vehicles' asking prices to account for differences in these dimensions. Adjusting comparable vehicles' list prices based on other vehicles' discounts off list price is no different.

22.    Ultimately, the task at hand is to ascertain the price at which a loss vehicle would have sold, not the price that a dealer would list it for. Choosing not to apply PSAs is equivalent to assuming that sold prices equal list prices. This assumption is clearly invalid on average. Lack of "hard data" specific to the comparable vehicle itself is no more basis to ignore the average effect of negotiation and dealer mispricing when estimating sales price than to ignore the average effects of condition, mileage, and configuration.

## V.    *NADA Data and the Need for Individualized Proof of Injury and Damages*

23.    I compared NADA Clean Retail Values to Mitchell Base Values for loss vehicles in a sample of claims that UFCC drew from the searchable database produced in discovery of all UFCC total loss claims in Maine, from August 16, 2016 through October 25, 2022. Mitchell valuations were often higher than NADA valuations—notwithstanding the inclusion of PSAs in the Mitchell valuations. This is consistent with there being a need for individualized analysis to show that any particular Mitchell valuation is less than ACV. I attempted to procure the NADA clean retail valuations corresponding to the loss vehicles in all 25 claims, but no NADA data were available for five of these 25 loss vehicles due to invalid VIN numbers or NADA not providing a

---

[32] Merritt Supplemental Report, pp. 4-5.

[33] *See* Merritt Report p. 4 and Merritt Supplemental Report pp. 3-4 where Mr. Merritt characterizes Mitchell's methodology as consistent with "the comparable methodology routinely applied by appraisers." *See also* Merritt Deposition, pp. 152-153, discussing the condition of Plaintiff McDonald's vehicle as reported in her Mitchell valuation report: "Again, when you look at just this vehicle in particular on Exhibit 16, it's showing that there was pretty significant wear on the carpet, multiple cuts in the drivers seat, had damage to the rear bumper and it's broken, had rust on panels, the hood, both quarter panels, obvious leak in the engine, and all four tires were bald. And they took a condition adjustment of $1110, and that seemed very fair."

CONFIDENTIAL

clean retail value for the specific VIN. For 10 of the 20 vehicles for which the comparison was possible, half, the WCTL Base Value exceeded the corresponding NADA Clean Retail Value. In Supplementary Table 1, I list the 20 loss vehicles for which NADA Clean Retail Values were available, their NADA Clean Retail Values, and Mitchell Base Values.

## VI. *UFCC Practice and the Need for Individualized Proof of Injury and Damages*

24.     Deposition testimony that was given subsequent to my initial report uncovered additional reasons that individualized proof of injury and damages to putative class members would be necessary.

25.     First, for Maine insureds who are unsatisfied with their WCTL valuations, UFCC may offer a valuation based on "exact-match" vehicles with the same build and similar mileage as the total loss vehicle. In such valuations there are no options adjustments.[34]

26.     Second, UFCC, through Mitchell, may also solicit dealer quotes for a vehicle with options and condition similar to the loss vehicle and have Mitchell base its valuation on the dealer quotes rather than its comparable vehicle database.[35]

27.     Third, UFCC sometimes offers cash concessions to insureds.[36]

28.     Finally, UFCC may increase condition ratings of total loss vehicles as a gesture of goodwill to get additional value for the insured.[37]

29.     In sum, UFCC does not always rely on Mitchell's valuations. When it does rely on those valuations, it may supplement the settlement and thereby offset the effect of PSAs on the valuation. When it does rely on a Mitchell valuation without supplementation, it may have adjusted condition ratings as a way to increase the valuation and thereby also offset the effect of PSAs. It would be necessary to conduct individualized analysis to determine whether any insured received less than ACV after these potential adjustments were identified and accounted for, even if there were (counterfactually) evidence that the PSAs were not fully warranted in an individual instance or ever.

---

[34] Deposition of Justin Green, October 2, 2024, pp. 39-40.
[35] Deposition of Justin Green, October 2, 2024, p. 40.
[36] Deposition of Michael Fries, October 2, 2024 ("Fries Deposition"), p. 45.
[37] Fries Deposition, p. 44.

CONFIDENTIAL

### VII.    Conclusion

30.    To my knowledge there is no reliable economic evidence that any of the Plaintiffs have suffered economic injury. In addition, Plaintiffs offer no reliable common-proof method to prove individualized injury to the putative class or measure damages reasonably at the individual level.


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on November 6, 2024.


Jonathan Walker

## Supplementary Table 1

Valuation Analysis for Sampled Claims

| VIN | Make | Model | NADA Clean Retail Value | WCTL Base Value | Base Value > NADA |
|---|---|---|---|---|---|
| 1G1AK55F277328085 | Chevrolet | Cobalt | $3,475.00 | $2,908.34 | no |
| 3VWML7AJ7CM634851 | Volkswagen | Jetta | $10,275.00 | $12,043.48 | yes |
| KMHCM3AC1AU181515 | Hyundai | Accent | $5,075.00 | $5,678.77 | yes |
| 2T3BFREV3FW370413 | Toyota | RAV4 | $20,775.00 | $21,090.38 | yes |
| JF1GJAC65DH029976 | Subaru | Impreza | $13,450.00 | $13,847.71 | yes |
| 1FTRF3B64FEC85936 | Ford | F350 | $27,825.00 | $27,531.83 | no |
| 1N4AL21E37C215047 | Nissan | Altima | $5,550.00 | $4,445.94 | no |
| 3GCUKREC7GG290522 | Chevrolet | Silverado 1500 | $38,050.00 | $35,015.14 | no |
| 4T1BF30K05U617341 | Toyota | Camry | $8,150.00 | $7,991.07 | no |
| 3N1CN7AP7EK445339 | Nissan | Versa | $8,100.00 | $8,629.06 | yes |
| 3FADP0L32AR224946 | Ford | Fusion | $5,150.00 | $5,646.07 | yes |
| 3VWJZ71K79M005237 | Volkswagen | Jetta | $5,275.00 | $5,427.19 | yes |
| 1FMCU9D74AKA78330 | Ford | Escape | $5,700.00 | $5,642.83 | no |
| JN8AS5MV9BW296738 | Nissan | Rogue | $7,200.00 | $7,504.48 | yes |
| 3GTU2UEC8FG274766 | GMC | Sierra 1500 | $33,375.00 | $31,455.48 | no |
| 1C3CCBBG3DN716656 | Chrysler | 200 | $7,025.00 | $7,035.42 | yes |
| KNDPNCAC8H7185234 | Kia | Sportage | $21,000.00 | $18,984.76 | no |
| 2GNFLEEK8F6313524 | Chevrolet | Equinox | $14,425.00 | $12,280.55 | no |
| 5FNYF4H5XFB045532 | Honda | Pilot | $21,450.00 | $18,216.38 | no |
| 2HGFB2F8XDH500943 | Honda | Civic | $13,850.00 | $14,113.50 | yes |

| | |
|---|---|
| # Claims in Sample | 25 |
| # Claims with both WCTL and NADA Reports | 20 |
| % Claims with both WCTL and NADA Reports, for which WCTL Base Value > NADA Clean Retail Value | 50% |

**Notes:**

1. NADA data are not available for VINs KMHD74LF8HU059723, 2GNAXSEV4J6101848, U15GLS83221, JN1AR5BF0MM160132, and 1J4FY19P9RP459289 due to invalid VIN numbers or NADA not providing a Clean Retail Value for that VIN.

**Sources:**

1. PGR_THURSTON_0001256 - PGR_THURSTON_0007504 (Vehicle Valuation Reports).

2. J.D. Power Values Online - NADA Reports.

# Exhibit A



# Jonathan L. Walker, Ph.D.
## Managing Director

**Professional Experience**

Jonathan Walker is a Managing Director at Secretariat Economists LLC, the successor organization to Economists Incorporated. Prior to joining Economists Incorporated, Dr. Walker had been a strategy consultant. Before that, he was a visiting research fellow at the Federal Reserve Bank of Boston. There, he participated in antitrust enforcement and conducted research concerning the commercial banking industry. Dr. Walker earned his undergraduate degree from the University of California at Berkeley. Upon graduation, he earned National Science Foundation and American Economics Association Fellowships to attend the Massachusetts Institute of Technology where he earned a Ph.D. in economics.

Dr. Walker was the President and Chief Executive Officer of Economists Incorporated for 18 years prior to its transition to Secretariat Economists. As President of Economists Incorporated, Dr. Walker oversaw approximately 30 Ph.D. economists plus other professionals and support staff in the conduct of economic research and the provision of economic consulting services throughout the world. In addition to his role managing the firm, Dr. Walker has often been retained personally to provide opinion testimony at U.S. and international arbitrations and in U.S. courts and to consult in a non-testifying capacity on a variety of economic topics.

Dr. Walker's consulting engagements most often concern antitrust, employment or damages questions that arise in the context of litigation or regulation. Dr. Walker's antitrust work has addressed topics such as merger analysis, market definition, competitive effects, antitrust injury and quantification of damages. In the employment realm, he has conducted statistical analyses to measure disparities in employment outcomes across demographic groups. Dr. Walker's non-antitrust compensatory damages work has most often concerned contract damages, lost profits, disgorgement and diminution in value. Dr. Walker has also investigated and testified about class certification as it related to antitrust, employment and damages claims. Dr. Walker has been retained on numerous occasions to consider punitive damages, including optimal fines and the adequacy or inadequacy of other incentives, besides punitive awards, to deter future wrongdoing.

**Contact Details**

Office:    +1.415.975.5510
Direct:    +1.415.975.3223
jwalker@secretariat-intl.com

**Professional History**

- Secretariat Economists
- Monitor Company
- Federal Reserve Bank of Boston

**Education**

- Ph.D., Economics, Massachusetts Institute of Technology
- A.B., Economics, University of California, Berkeley

**Honors**

- American Economics Assn. Doctoral Fellowship
- National Science Foundation Doctoral Fellowship
- Honors in General Studies, U.C., Berkeley

**Professional Associations**

- American Economic Association
- American Bar Association
- Industrial Organization Society
- Western Economics Association
- American Law and Economics Association
- Society of Labor Economics

Secretariat Economists was formed in July 2021 with Secretariat's acquisition of Economists Incorporated.



Jonathan L. Walker, Ph.D.

Dr. Walker's case experience spans a variety of industries including but not limited to agriculture, sports, energy, financial services, education, healthcare, manufacturing, natural resources, professional services, real estate and transportation.

Dr. Walker has been retained by plaintiffs and defendants alike. On the plaintiff side, Dr. Walker' clients have included individuals, unions, corporations, and government agencies such as the U.S. Department of Justice and U.S.  Department of Labor. On the defendant side, Dr. Walker has also been retained by individuals, corporations, and government agencies as well as not-for-profit charitable organizations, not-for-profit corporations and sports leagues.

In addition to consulting work, Dr. Walker is Chairman of the Board of Directors of the San Francisco Marin Food Bank. He joined the Board in 2013 and has served on its Finance, Audit and Governance Committees as well as various task forces.

**Testifying Engagements**

- *Gena Houghton and Randolph Miller v. Farmers Insurance Company of Washington – Declaration on behalf of defendant regarding class certification, injury and damages*

- *Dillon Koch v. Progressive Direct Insurance Company –* Declaration on behalf of defendant regarding class certification, injury and damages

- *David Taxer and Saul Cortes v. Progressive Universal Insurance Company and Progressive Classic Insurance Company – Declaration on behalf of defendant regarding class certification, injury and damages*

- *Erik Knight v. Progressive Northwestern Insurance Company –* Declaration on behalf of defendant regarding class certification, injury and damages

- *NFL Players Association v. National Football League, et al. –* Expert reports (4), deposition testimony and trial testimony in an arbitration proceeding on behalf of respondents regarding damages and liability

- *Melissa Watson v. Progressive Direct Insurance Company –* Declaration on behalf of defendant regarding class certification, injury and damages

- *Normanda Holmes and Sherry Citchens-Wright v. Progressive Universal Insurance Company –* Declaration on behalf of defendant regarding class certification, injury and damages

- *Kiara Siebert v. Progressive Select Insurance Company –* Declaration on behalf of defendant regarding class certification, injury and damages

- *Guadalupe Castro v. Texas Farm Bureau Underwriters –* Declaration and deposition testimony on behalf of defendant regarding class certification, injury and damages

2



Jonathan L. Walker, Ph.D.

- *Kraft Foods Global, Inc., The Kellogg Company, General Mills, Inc., and Nestle USA, Inc. v. United Egg Producers, Inc., United States Egg Marketers, Inc., Cal-Maine Foods, Inc., and Rose Acre Farms, Inc.* – Trial testimony on behalf of defendants regarding antitrust liability and damages

- *Sarah Henson and Diana Dasalla v, Progressive Premier Insurance Company and Progressive Southeastern Insurance Company* – Declaration on behalf of defendant regarding class certification, injury and damages

- *Heather Schroeder and Misty Tanner v. Progressive Paloverde Insurance Company and Progressive Southeastern Insurance Company* – Declaration on behalf of defendant regarding class certification, injury and damages

- *Betty Vantree and Cynthia Rayborn v. Progressive Gulf Insurance Company and Mountain Laurel Assurance Company* – Declaration on behalf of defendant regarding class certification, injury and damages

- *Amy Kroeger v. Progressive Universal Insurance Company* – Declaration on behalf of defendant regarding class certification, injury and damages

- *Lauren Reynolds and Lauri Penn v. Progressive Direct Insurance Company and Progressive Specialty Insurance Company* – Declaration on behalf of defendant regarding class certification, injury and damages

- *Elliot Ambrosio and Sierra Trenholm v. Progressive Preferred Insurance Company and Progressive Advanced Insurance Company.* – Declaration on behalf of defendant regarding class certification, injury and damages

- *Sabrina Timmins, et al. v. American Family Insurance Co. and American Family Mutual Insurance Co., S.I.* – Declaration and deposition testimony on behalf of defendants regarding class certification, injury and damages

- *Lillian Bartee and Lisa Bledsoe v. Progressive Advanced Insurance Co. and Progressive Casualty Insurance Co.* – Declaration on behalf of defendant regarding class certification, injury and damages

- *Eric Jones and Herbert Bowens v. Progressive Universal Insurance Co. and Artisan and Truckers Casualty Co.* – Declaration on behalf of defendant regarding class certification, injury and damages

- *IsoNova Technologies, LLC v. David Rettig and OvaInnovations, LLC* – Expert report on behalf of plaintiff/counterdefendant concerning antitrust liability and damages

- *Taylor Costello v. Mountain Laurel Assurance Company* – Declaration and deposition testimony on behalf of defendant regarding class certification, injury and damages

- *Keddrick Brown v. Progressive Mountain Insurance Co. and Michelle Bost v. Progressive Premier Insurance Co. of Illinois* – Declaration and deposition testimony on behalf of defendants regarding class certification, injury and damages

3



Jonathan L. Walker, Ph.D.

- *Leon Drummond, et al., v. Progressive Specialty Insurance Company and Progressive Advanced Insurance Company* – Declaration and deposition testimony in support of defendants' opposition to class certification

- *Lynn Freeman v. Progressive Direct Insurance Company* – Declaration and deposition testimony in support of defendant's opposition to class certification

- *Robert Kronenberg, et al. v. Allstate Insurance Co. and Allstate Fire and Casualty Insurance Co.* – Declaration and deposition testimony in support of Defendants' opposition to class certification

- *Shahid Khan, et al. v. BDO Seidman, LLP et al.* – Expert report and deposition testimony on behalf of plaintiffs regarding liability for breach of contract, fraud and other alleged violations

- *In Re Fifth Third Early Access Cash Advance Litigation* – Expert report and deposition testimony on behalf of plaintiffs and class members regarding contract damages

- *Roslyn La Liberte v. Joy Reid* – Expert report and deposition testimony on behalf of defendant regarding damages from alleged defamation

- *Volino, et al. v. Progressive Casualty Insurance Company, et al.* – Declarations (2) and deposition testimony in support of defendants' opposition to class certification

- *Linus Gilbert and James Jn-Marie v. Spartan Concrete Products, LLC and Heavy Materials, LLC* – Declarations (3) and testimony at a class certification hearing in support of defendants' opposition to class certification

- *In Re Broiler Chicken Antitrust Litigation* – Expert reports (2) and deposition testimony on behalf of Koch Foods, Inc., and related entities regarding antitrust liability

- *Glenn Durgin, et al. v. Allstate Property and Casualty Insurance Company* – Declaration and deposition testimony in support of defendant's opposition to class certification

- *Arthur Sampson, Jr., et al. v. USAA General Indemnity Co., et al.* – Declaration and deposition testimony in support of defendants' opposition to class certification

- *Elizabeth V. Fortson v. Garrison Property and Casualty Insurance Company* - Declaration and deposition testimony in support of defendants' opposition to class certification

- *Jeff Olberg, et al. v. Allstate Insurance Co. et al.* – Declaration and deposition testimony in support of defendants' opposition to class certification

- *Lynnett Myers, et al. v. Marietta Health Care Inc., et al.* – Declaration on behalf of defendants concerning statistical analysis, expert report, rebuttal report and deposition testimony regarding class damages

- *Ameenjohn Stanikzy v. Progressive Direct Insurance Co.* – Expert report in support of defendant's opposition to class certification

4



Jonathan L. Walker, Ph.D.

- *Gina Signor v. Safeco Insurance Company of Illinois* – Declaration and deposition testimony in support of defendant's opposition to class certification

- *In Re Ellis* – Damages reports (2) on behalf of respondent in arbitration concerning alleged breach of contract, defamation and false light

- *Audrey Heredia et al. v. Sunrise Senior Living, LLC and Sunrise Senior Living Management, Inc.* – Declaration and deposition testimony in support of defendants' opposition to class certification

- *William South v. Progressive Select Insurance Co.* – Declaration and deposition testimony in support of defendant's opposition to class certification

- *Cameron Lundquist et al. v. First National Insurance Company of America, et al.* – Declaration and deposition testimony in support of defendants' opposition to class certification

- *Jeremy Richardson and Mandy Larson v. Progressive American Insurance Co., et al.* - Declaration in support of defendants' opposition to class certification

- *North American Soccer League, LLC v. United States Soccer Federation, Inc. and Major League Soccer, LLC* – Expert report and deposition testimony on behalf of Major League Soccer, LLC concerning antitrust liability

- *The Kroger Co., Safeway Inc., et al. v. United Egg Producers, Inc., et al.* – Trial testimony on behalf of defendants concerning antitrust liability

- *Rachel Curtis v. Progressive Northern Insurance Company* – Expert report on behalf of defendant concerning class certification and damages

- *E & J Gallo Winery v. Strategic Materials, Inc.* – Expert reports (3), declaration and deposition testimony (2) on behalf of defendant and counterclaim plaintiff regarding contract damages

- *Erin Kis et al. v. Covelli Enterprises, Inc.* – Declaration, expert report and deposition testimony on behalf of defendant regarding liability

- *In Re: Daniel Fegan* – Arbitration testimony on behalf of claimant concerning contract damages

- *In Re: Processed Egg Products Litigation* – Expert reports (4), class decertification declaration, hearing testimony, deposition testimony and class action trial testimony on behalf of defendants concerning antitrust damages and liability

- *Anne Roty and Mary Neff v. Battelle Memorial Institute, et al*. – Expert report on behalf of defendants concerning statistics

- *Bobby Jones et al. v. Progressive Direct Insurance Co. et al.* – Expert report and declaration on behalf of defendant concerning class certification and damages



Jonathan L. Walker, Ph.D.

- *In Re: Aaron Slator* – Export report and arbitration testimony on behalf of respondent concerning contract damages

- *All-South Subcontractors, Inc. v. Sunbelt Rentals, Inc.* – Expert report on behalf of defendant concerning class certification

- *Federal Deposit Insurance Corporation v. PricewaterhouseCoopers LLP and Crowe Horwath LLP* – Expert report and deposition testimony on behalf of plaintiffs concerning damages

- *Precision Spine, Inc. and Spinal USA, Inc. v. Zavation, LLC et al.* – Expert report and deposition testimony on behalf of plaintiffs concerning damages

- *Chicago Teachers Union et al. v. Board of Education of the City of Chicago et al. (Case No. 12-C-10311)* – Expert reports (3), declaration and deposition testimony on behalf of plaintiffs concerning liability

- *Chicago Teachers Union et al. v. Board of Education of the City of Chicago et al. (Case No. 12-C-10338)* – Expert reports (2) and deposition testimony on behalf of plaintiffs concerning liability

- *Charles Ridgeway, et al. v. Wal-Mart Stores, Inc.* – Expert report, trial and deposition testimony on behalf of defendant concerning class injury and damages

- *Daniel Villalpando, et al. v. Exel Direct Inc., et al.* – Expert report and deposition testimony on behalf of defendants concerning class damages

- *United States ex rel. Landis v. Tailwind Sports Corp., et al.* – Expert report, declaration and deposition testimony of behalf of plaintiff concerning damages

- *The West Virginia Investment Management Board et al. v. The Variable Annuity Life Insurance Company* – Expert report and deposition testimony on behalf of defendant concerning damages

- *In Re: Taco Bell Wage and Hour Actions* – Expert reports (2), deposition and trial testimony on behalf of defendant concerning liability and remedies

- *Peter Sripramot v. Nor Cal Freight Mgmt., Inc., et al.* – Expert report on behalf of defendant concerning damages

- *Moroccanoil Inc., v. Marc Anthony Cosmetics, Inc., et al.* – Expert report and deposition testimony on behalf of plaintiff concerning trademark infringement remedies

- *Isidro Baricuatro, Jr., et al. v. Industrial Personnel and Management Services, Inc., et al.* – Expert report and deposition testimony on behalf of defendants concerning Fair Labor Standards Act and contract damages

- *Ameira Watters v. General Motors LLC, et al.* – Expert report on behalf of defendants concerning damages

6



Jonathan L. Walker, Ph.D.

- *Louis Cimaglia v. Royal Pontiac Buick GMC Inc., et al.* – Expert report on behalf of defendants concerning damages

- *Harris County, Texas et al. v. International Paper Company, et al.* – Expert report and deposition testimony on behalf of defendants concerning punitive damages

- *United States v. Bank of America Corp. et al.* – Expert report and deposition testimony on behalf of defendants concerning financial harm

- *Diane Zwarg v. BB&T Insurance Services of California, Inc., et al.* – Trial and deposition testimony on behalf of defendants concerning damages

- *Ritchie Risk – Linked Strategies Trading (Ireland), Ltd., et al. v. Coventry First LLC, et al.* – Expert report and deposition testimony on behalf of defendants concerning economic loss

- *In Re: BDO Seidman* – Expert report and deposition testimony on behalf of defendant concerning damages from alleged breach of professional responsibility

- *U.S. SEC v. Ralph Cioffi* – Deposition testimony on behalf of defendant concerning hedge fund operations

- *Ultra Internet Media, S.A., et al. v. Caesars License Company, LLC et al.* – Expert report on behalf of defendants concerning damages

- *Lauren Knowles v. Kelly Buick, Inc., et al.* – Expert report on behalf of defendants concerning economic loss

- *Kenneth D. Klaas, et al. v. Vestin Mortgage Inc., et al.* – Expert reports (2) on behalf of defendants concerning contract damages

- *Tyr Sport, Inc. v. Warnaco Swimwear, Inc., United States Swimming, Inc., et al.* – Expert report on behalf of defendants concerning antitrust liability

- *United States of America v. Ralph Cioffi and Matthew Tannin* – Testimony at criminal trial on behalf of defendants concerning hedge fund operations

- *Charles M. Felton et al. v. Vestin Realty Mortgage II, et al.* – Deposition testimony and testimony at a bench trial on behalf of defendants concerning contract damages

- *National Union Fire Insurance Co. of Pittsburgh, PA v. Puget Plastics Corporation et al.* – Deposition testimony and testimony at a bench trial on behalf of plaintiff concerning lost profits and diminution in business value

- *Deutscher Tennis Bund, et al. v. ATP Tour Inc.* – Expert reports (2), deposition testimony and testimony at a jury trial on behalf of defendant concerning antitrust liability

7



Jonathan L. Walker, Ph.D.

- *John Johnson, et al. v. Big Lots Stores, Inc.* – Expert reports (2), declarations (2), deposition testimony, and testimony at a bench trial on behalf of defendant concerning alleged violation of Fair Labor Standards Act.

- *MGP Ingredients, Inc. v. Mars, Inc. and S&M NuTec, LLC* – Expert report and deposition testimony on behalf of defendant concerning damages

- *In Re:  H Street Building Corporation* – Deposition testimony on behalf of defendant concerning damages

- *In Re: The National Benevolent Association of the Christian Church (Disciples of Christ), et al.* – Expert report, rebuttal report and deposition testimony on behalf of plaintiff concerning damages

- *Chemical Overseas Holdings Inc., et al. v. Republica Oriental Del Uruguay, et al.* – Expert report, supplemental report and arbitration testimony on behalf of respondents concerning damages

- *In Re:  Lockheed Meridian, MS Shooting Incident* – Expert reports (3) and deposition testimony on behalf of defendant concerning damages

- *John D. Wee v. Charles Schwab & Co., Inc.* – Arbitration testimony on behalf of plaintiff concerning damages

- *In Re:  Robin Singh d/b/a Test Masters* – Expert reports (2), declaration and deposition testimony on behalf of plaintiff concerning damages

- *Patrick J. Cunningham and Anton N. Zanki v. International Business Machines Corporation* – Expert report, rebuttal report and deposition testimony on behalf of defendant concerning alleged breach of contract

- *Mark Hodges, et al. v. Greater Canton Ford Mercury, Inc., et al.* – Expert report on behalf of defendant concerning punitive damages

- *In Re: Frank T. Vega* – Declaration on behalf of defendant concerning damages

- *Martin Leach v. Ford Motor Co.* – Expert report on behalf of defendant concerning the corporate officer labor market in a breach of contract suit

- *Westways World Travel, Inc. and Sundance Travel Service v. AMR Corp., et al.* – Expert report and deposition testimony on behalf of defendants concerning compensatory damages

- *Traci A. Savage v. Ford Motor Co.* – Expert report on behalf of defendant concerning the economics of punitive damages

- *Randy Eugene Wheeler v. Ford Motor Co.* – Deposition testimony on behalf of defendant concerning lost NFL earnings and other alleged damages

8



Jonathan L. Walker, Ph.D.

- *David Braswell v. Holley Performance Products Inc.* – Expert report and rebuttal on behalf of defendant concerning antitrust liability and antitrust damages

- *Ertha Mae Williams v. CSX Transportation Inc., et al.* – Deposition testimony on behalf of defendants concerning the economics of punitive damages

- *R. Straman Co. and Newport Convertible Engineering, Inc. v. Volkswagen of America, et al.* – Deposition testimony on behalf of defendants concerning antitrust liability and antitrust injury

- *Roll International Corporation and Paramount Farms, Inc. v. Unilever United States, Inc. and Conopco, Inc.* – Testimony at jury trial on behalf of defendants regarding compensatory damages for alleged breach of contract and false promise

- *Newhall Land and Farming Co. v. Kerr McGee Operating Corporation, et al.* – Deposition testimony on behalf of defendants concerning the economics of punitive damages

- *Marcia Spielholz, et al. v. Los Angeles Cellular Telephone Company, et al.* – Expert report on behalf of defendants concerning remedies in a class action false advertising suit

- *David N. Orrik v. Stryker Corporation, et al.* – Deposition testimony on behalf of defendants concerning the economics of punitive damages

- *Agneta Karlsson, et al. v. Michael A. Savage* – Deposition testimony on behalf of defendants concerning the economics of punitive damages and product liability

- *Homestore, Inc. v. America Online* – Expert report and arbitration testimony on behalf of respondent concerning damages from breach of contract

- *Michael Meitus, et al. v. Dain Rauscher Wessels, Dain Rauscher Corporation and Dain Rauscher Inc.* – Arbitration testimony on behalf of claimants concerning the competitive structure of the securities industry and other economic matters

- *In Re: 1994 Exxon Chemical Plant Fire* – Expert report on behalf of defendant concerning the economics of punitive damages

- *Avis Buchanan, et al v. Consolidated Stores Corp.* – Declaration and deposition testimony on behalf of defendant concerning statistical and other economic analyses in a class action public accommodations suit

- *State of Alabama v. Exxon Corporation* – Affidavit and testimony at post- trial hearing on behalf of defendant concerning the economics of punitive damages

- *Aspen Knolls Corp., et al v. McDermott Will & Emery* – Expert report on behalf of defendant concerning damages in a legal malpractice suit

- *Legi-Slate Inc. v. Thomson Information Services Inc.* – Expert reports (2) and deposition testimony on behalf of plaintiff concerning damages from breach of contract



Jonathan L. Walker, Ph.D.

- *United States of America ex rel., William I. Koch and William A. Presley v. Koch Industries, Inc., et al.* – Expert report, deposition testimony and testimony at jury trial on behalf of defendants concerning economic issues in a False Claims Act suit

- *Ronald O. Lewis v. Booz-Allen & Hamilton Inc.* – Expert reports (4) and deposition testimony on behalf of plaintiff regarding statistics and damages in an employment discrimination suit

- *Richard Rogers Mason v. Ford Motor Company* – Expert report and deposition testimony on behalf of defendant regarding liability in a product liability suit

- *Dr. Michael J. Galvin v. The New York Racing Association, Inc., et al.* – Expert report and declaration on behalf of defendant regarding commercial damages in breach of due process and tortious interference suit

- *Roll International Corporation and Paramount Farms, Inc. v. Unilever United States, Inc., et al.* – Deposition and bench trial testimony on behalf of defendants regarding business valuation and damages in a breach of contract and fraudulent misrepresentation suit

- *Yvonne Trout, et al. v. John Dalton, et al.* – Affidavit and declaration on behalf of the United States concerning prejudgment interest

- *Willie Brown Jr., et al. v. General Motors Corporation* – Testimony at deposition and jury trial concerning lost NFL player earnings

- *Royer Homes of Mississippi, Inc., et al. v. Redman Homes, Inc., et al.* – Affidavits (2), expert reports (2) and deposition testimony on behalf of defendants concerning antitrust liability and damages

- *W. C. and A. N. Miller Companies v. United States of America* – Expert report and deposition testimony on behalf of defendant concerning commercial damages in a Federal Tort Claims Act suit

- *SMS Systems Maintenance Services, Inc. v. Digital Equipment Corporation* – Expert report and deposition testimony on behalf of defendant concerning antitrust damages and liability

- *Francis W. Murray and FWM Corporation v. National Football League, et al.* – Expert report and deposition testimony on behalf of defendants regarding market definition, alleged anticompetitive conduct and alleged antitrust injury

- *Michael A. Willner v. Dow Jones & Company, Inc., et al.* – Deposition testimony on behalf of defendants regarding damages in a breach of contract and unfair dealing suit

- *Dream Team Collectibles, Inc. v. NBA Properties, Inc.* – Expert reports (2) and deposition testimony on behalf of NBA Properties regarding damages and other economic issues in a trademark infringement suit and counter suit

- *Breezevale Limited v. Timothy L. Dickinson, et al.* – Deposition and jury trial testimony on behalf of defendants regarding commercial damages in a legal malpractice suit



Jonathan L. Walker, Ph.D.

- *Sonja Lumpkin v. Citizens Bank of Maryland, Incorporated* – Affidavit on behalf of defendant regarding damages in a wrongful termination suit

- *Carolee Brady Hartman, et al. v. Joseph Duffey* – Declarations (7) and live testimony at four Teamsters Hearings on behalf of the defendant, the United States Government, regarding damage estimation in a class action sex discrimination suit

- *Robert B. Reich v. Charles I. Brown, Peter M. Mazula, and Ronald F. Nuzman* – Affidavit and deposition testimony for the United States Department of Labor regarding alleged breach of fiduciary responsibility under ERISA

- *United Farmers Agents Association, Inc. v. Farmers Insurance Exchange, et al. and Thomas J. Vinson, et al. v Farmers Insurance Exchange, et al.* – Affidavit and deposition testimony for plaintiffs regarding antitrust liability

- *Anthony Brown, et al. v. Pro Football, Inc.* – Testimony for defendants, the member clubs of the NFL, at jury trial regarding antitrust damages

- *Robert E. Connor, et al. v. Harris County, et al.* – Deposition testimony and a written declaration for plaintiffs, members of a class of job applicants, regarding a cost defense for allegedly discriminatory employment practices

- *Laura Kelber against Forest Electric Corp. and Forest Datacom* – Affidavit in opposition to defendants' motion for summary judgement in a sex discrimination suit

## Selected Consulting Matters

- *Ernst & Young/ KPMG* – Antitrust consulting regarding potential consolidation

- *NASCAR Souvenirs* – Consulting for defendants concerning class certification in an antitrust matter

- *First Databank* – Antitrust consulting regarding acquisition of Medi-Span Inc.

- *Metal Supermarkets* – Consulting for plaintiff regarding commercial damages arising from legal malpractice

- *Vulcan* – Antitrust consulting regarding the acquisition of an Atlanta quarry

- *Brodus v. Children's National Medical Center* – Consulting regarding damages in a wrongful termination suit

- *International Paper* – Antitrust consulting regarding photographic paper and other photographic material

- *St. Louis Convention and Visitors Commission v. National Football League, et al.* – Antitrust consulting regarding franchise relocation

- *The Baltimore City Paper* – Consulting regarding commercial damages allegedly arising from libel

11



Jonathan L. Walker, Ph.D.

- *Allied Domecq* – Consulting for liquor supplier regarding terminated dealer's lost profits

- *National Football League* – Consulting regarding trademark and antitrust issues in suits between the Dallas Cowboys and its affiliates and the NFL

- *IndyCar Racing* – Antitrust consulting

- *Albertson's* – Antitrust consulting for potential plaintiff in a price-fixing matter

- *New Orleans Hospitals* – Antitrust consulting regarding joint venture among New Orleans hospitals

- *General Dynamics* – Consulting for plaintiff regarding damages in commercial litigation

- *Telecom Technical Services, et al. v. ROLM* – Consulting for plaintiffs in antitrust litigation

- *The Boston Herald* – Consulting regarding damages allegedly caused by publication of a news story

- *Automotive Dismantlers and Recyclers Association v. ADP Claims Solutions Group, Inc.* – Antitrust consulting regarding used automobile parts databases

- *Mercy/St. Vincent* – Consulting regarding the merger of two hospital systems in Toledo, Ohio

- *Kalium/IMC* – Consulting regarding the merger of Kalium and IMC

- *Agricultural Chemicals Antitrust Litigation* – Antitrust consulting for defendants, Zeneca Corp., Helena Corp. and Terra Corp. in an RPM class action suit

- *The Clorox Company v. Sterling Winthrop, Inc., et al.* – Antitrust consulting for plaintiffs in litigation alleging misuse of trademark protections for anticompetitive gain

- *Chittenden Corporation* – Antitrust consulting regarding a bank holding company's acquisition plans

- *National Basketball Association* – Damage estimation for the NBA in antitrust suit brought against it by Independent Entertainment Group Incorporated

- *Magic Line Inc.* – Merger of ATM networks

- *Home Shopping Network* – Ex-post valuation of contingent contract concerning software and consulting services

- *Lenfest Group, Comcast Corporation and Telecommunications Incorporated* – Consultation regarding Delaware Public Service Commission rules to implement the Telecommunications Technology Investment Act

- *Worthen Financial Corporation* – Acquisition of Union National Bank of Arkansas

12



Jonathan L. Walker, Ph.D.

- *Intrust Bank* – Merger with Kansas State Bank & Trust

- *Iowa National Bankshares* – Merger with MidAmerica Savings Banks

- *First National Bank of Kerrville* – Acquisition of Bank of Kerrville

- *Peoples Heritage Financial Group* – Acquisitions of Mid Maine Savings Bank, Bank of New Hampshire, CFX, and certain branches of Fleet Bank of Maine

- *Potash Antitrust Litigation* – Antitrust consulting for defendants in a class action suit alleging price fixing in the potash industry

- *R&D Business Systems, et al. v. Xerox Corporation* – Antitrust consulting for plaintiffs in a class action suit alleging tying and monopolization in the copier and printer industries

- *Society Corp.* – Acquisition of Ameritrust

- *VDDE Holm, Voest Alpina, Bohler* – Antitrust consulting in connection with the merger of two European steel manufacturers

- *McNeil, et al. v. NFL* – Estimation of damages resulting from player reservation system

- *U.S Department of Justice v. City of Alhambra, California* – Analysis of evidence of discriminatory hiring practice

- *Christiana Mortgage Brokers, et al. v. Delaware Trust, et al.* – Estimation of damages resulting from tortious interference in the mortgage brokerage industry in New Castle County, Delaware

- *Merger of Two Savings and Loan Assns.* – Antitrust consulting in connection with the merger of two thrift institutions

- *Mid Atlantic Coca-Cola* – Analysis of evidence of price fixing and estimation of resulting damages

## Presentations and Publications

- "The Franchise No Poach Liability Continuum," *Economists Ink*, Summer 2020

- "Discounting Lost Future Earnings," *Economists Ink*, Summer 2015 (with Erica Greulich)

- *87th Annual Conference of the Western Economics Association International, "Sports Economics on Trial,"* June 30, 2012 – Symposium panelist

- "DTB and the Use of Regression Analysis to Assess Market Definition and Competitive Effects," Antitrust Law Section of the American Bar Association, *Economics Committee Newsletter*, Spring 2011 (with Erica Greulich)

- *"Preparing for Trial: Expert Economic Testimony," Antitrust Section of the American Bar Association 59th Spring Meeting*, Continuing Legal Education Written Materials, March 2011

13



Jonathan L. Walker, Ph.D.

- *American Bar Association Antitrust Section Annual Meetings,* March 9, 2011 – Presentation concerning preparation for economic trial testimony

- "The Single Entity Issue in American Needle and DTB," *Westlaw Journal Antitrust, Volume 18, Issue 1,* April 2010 (with Erica Greulich)

- "Event Studies, Toxic Stock and Non-Compete Provisions," *Economists Ink,* Fall 2005

- "Statistical Evidence and a Daubert Challenge in a Recent Discrimination Case," *Economists Ink,* Summer 2004

- "Price Increases Attributable to Patent Infringement or Entry," *Economists Ink,* Spring 2004 (with Tessie Su)

- "Ninth Circuit Expounds on Antitrust Injury," *Economists Ink,* Fall 2003

- "The Deterrence Value of Punitive Damages," *Economists Ink,* Fall 2001 (with Laura Malowane)

- American Law Institute – American Bar Association Course of Study, *"Antitrust Law in the 21st Century,"* September 14-15, 2000 – Presentation concerning the economics of professional sports leagues

- *American Bar Association* Antitrust Section Annual Meetings, April 14, 1999 – Presentation concerning the economic foundations of antitrust law

- "Recent Development in Bank Merger Competition Policy," *Banking Law Review,* Spring 1992 (with Bruce Snapp and David Balto)

- "U.S. Bank Merger Competition Policy," *International Merger Law 16,* December 1991 (with Bruce Snapp)

- "Not So Safe Harbor for Bank Mergers," *Economists Ink,* Winter 1991

- *National Economists Club Educational Foundation,* "What Effect Will Financial Restructuring Have On Banks?" August 13, 1991 – Moderator

14



## Exhibit B. ADDITIONAL MATERIALS CONSIDERED

### Category

### Bates-Stamped Files

**Production Documents**

**Named Plaintiffs' Claim Files**

**Bridges – Claim 23-2733986-01**

| | | |
|---|---|---|
| Bridges_00001-49 | PGR_THURSTON_0007656 | PGR_THURSTON_0007605 |
| Bridges_00050-52 | PGR_THURSTON_0007657 | PGR_THURSTON_0007606 |
| PGR_THURSTON_0007577 | PGR_THURSTON_0007658 | PGR_THURSTON_0007618 |
| PGR_THURSTON_0007589 | PGR_THURSTON_0007662 | PGR_THURSTON_0007619 |
| PGR_THURSTON_0007594 | PGR_THURSTON_0007674 | PGR_THURSTON_0007622 |
| PGR_THURSTON_0007595 | PGR_THURSTON_0007682 | PGR_THURSTON_0007651 |
| PGR_THURSTON_0007596 | PGR_THURSTON_0007687 | PGR_THURSTON_0007654 |
| PGR_THURSTON_0007597 | PGR_THURSTON_0007690 | PGR_THURSTON_0007655 |
| PGR_THURSTON_0007601 | PGR_THURSTON_0007694 | |
| PGR_THURSTON_0007602 | PGR_THURSTON_0007698 | |

**McDonald – Claim 19-2813486**

| | | |
|---|---|---|
| McDonald_00023-24 | PGR_THURSTON_0008143 | PGR_THURSTON_0008233 |
| McDonald_000001-22 | PGR_THURSTON_0008146 | PGR_THURSTON_0008234 |
| PGR_THURSTON_0008068 | PGR_THURSTON_0008147 | PGR_THURSTON_0008235 |
| PGR_THURSTON_0008132 | PGR_THURSTON_0008155 | PGR_THURSTON_0008237 |
| PGR_THURSTON_0008133 | PGR_THURSTON_0008156 | PGR_THURSTON_0008238 |
| PGR_THURSTON_0008134 | PGR_THURSTON_0008158 | PGR_THURSTON_0008246 |
| PGR_THURSTON_0008135 | PGR_THURSTON_0008159 | PGR_THURSTON_0008253 |
| PGR_THURSTON_0008136 | PGR_THURSTON_0008186 | PGR_THURSTON_0008256 |
| PGR_THURSTON_0008142 | PGR_THURSTON_0008202 | |

### Declarations, Depositions and Associated Exhibits

Declaration of Jonathan Walker, Ph.D., *Matthew Thurston vs. Progressive Casualty Insurance Company and United Financial Casualty Company*, April 15, 2024.

Deposition of Genevieve McDonald and Exhibits, *Matthew Thurston, Genevieve McDonald, and Katherine Bridges vs. Progressive Casualty Insurance Company and United Financial Casualty Company*, September 19, 2024.

Deposition of Katherine Bridges and Exhibits, *Matthew Thurston, Genevieve McDonald, and Katherine Bridges vs. Progressive Casualty Insurance Company and United Financial Casualty Company*, September 19, 2024.

Deposition of Michael Fries, *Matthew Thurston vs. Progressive Casualty Insurance Company and United Financial Casualty Company*, October 2, 2024.

Deposition of Justin Green, *Matthew Thurston vs. Progressive Casualty Insurance Company and United Financial Casualty Company*, October 2, 2024.

Deposition of Jason Merritt, *Matthew Thurston vs. Progressive Casualty Insurance Company and United Financial Casualty Company*, October 22, 2024.

---

**Discovery Responses**

Plaintiff Katherine Bridges' Amended Responses and Objections to Defendant United Financial Casualty Company's First Set of Requests for Production of Documents, September 17, 2024.

Plaintiff Katherine Bridges' Amended Responses and Objections to Defendant United Financial Casualty Company's First Set of Interrogatories, September 17, 2024.

Plaintiff Genevieve McDonald's Amended Responses and Objections to Defendant United Financial Casualty Company's First Set of Requests for Production of Documents, September 17, 2024.

Plaintiff Genevieve McDonald's Amended Responses and Objections to Defendant United Financial Casualty Company's First Set of Interrogatories, September 17, 2024.

---

**Guidebook Values**

**KBB Reports for Plaintiffs**

2009 Volkswagen Passat - KBB
2020 Kia Telluride - KBB

**NADA Reports for Plaintiffs**

2009 Volkswagen Passat - NADA
2020 Kia Telluride -NADA

**NADA Reports for Sampled Claims**

| | | |
|---|---|---|
| 2010 Hyundai Accent | 2015 Ford F350 | 2021 Nissan GT-R |
| 2011 Nissan Rogue | 2015 GMC Sierra 1500 | 2005 Toyota Camry |
| 2012 Volkswagen Jetta | 2015 Honda Pilot | 2007 Chevrolet Cobalt |
| 2013 Chrysler 200 | 2015 Toyota RAV4 | 2007 Nissan Altima |
| 2013 Honda Civic | 2016 Chevrolet Silverado | 2009 Volkswagen Jetta |
| 2013 Subaru Impreza | 2017 Hyundai Elantra | 2010 Ford Escape |
| 2014 Nissan Versa | 2017 Kia Sportage | 2010 Ford Fusion |
| 2015 Chevrolet Equinox | 2018 Chevrolet Equinox | |

**Experts' Reports**

Supplemental Expert Report of Jason Merritt and Exhibits, October 14, 2024.

**Filings and Motions**

Plaintiff's Amended Motion for Class Certification, September 13, 2024, and Exhibits.

Second Amended Class Action Complaint, June 28, 2024.

**Other Sources**

Kelley Blue Book, "Frequently Asked Questions: Used Car". Available at https://www.kbb.com/faq/used-cars/#question-2, accessed October 30, 2024.